## WARREN SPRINGER
### v.
## THE CITY OF CHICAGO.

*Municipal Corporation—Street Improvements—Private Property—
Damage to—View by Jury—Practice—Evidence—Instructions.*

1. In an action against a municipality to recover for injuries alleged to
have been suffered by real property through street improvements, it is
proper, touching the subject of damages, to introduce in evidence in
behalf of the defendant, an option contract entered into by plaintiff with
third parties about the time of the completion of the improvements in
question, wherein he agreed to sell the property involved at a certain price.

2. In such cases, in determining whether private property was injured
by a given improvement, such improvement must be considered as a whole.

3. It seems that a court in this State has no power or authority to order
a view by the jury in a common law action against the objection of a party
to the cause.

[Opinion filed July 9, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon.
RICHARD S. TUTHILL, Judge, presiding.

Messrs. KNIGHT & BROWN and E. H. GARY, for appellant.

Messrs. JONAS HUTCHINSON, CLARENCE S. DARROW and
BYRON BOYDEN, for appellee.

MORAN, J. This was an action brought by appellant to

Springer v. City of Chicago.

recover damages alleged to have been caused to the property of appellant, by the construction by appellee of Jackson street bridge and viaduct, and the Canal street approach to the said bridge and viaduct.   The trial before the court and jury resulted in a verdict for the appellee, on which a judgment was entered.

To reverse said judgment it is urged that the court erred in admitting improper evidence, in that appellee was permitted to introduce in evidence an option contract, given by appellant, by which he agreed to sell the property alleged to be damaged, at a certain price, at or about the time of the completion of the improvements, by which the injury to the property was claimed to have been done.   We are of opinion that no error was committed in admitting the evidence.   It tended to show what was the value of the land, in the estimation of the owner, after the improvements were made, and was in the nature of an admission which was competent against him. Watson v. Railroad Co., 57 Wis. 332.   Like all other admissions it was subject to explanation, and the circumstances under which it was made were fully shown, and probably were such as to give it but little weight against appellant.   But whatever its weight it was competent to go to the jury in connection with all the other facts and circumstances in the case.

It is urged the court improperly modified instructions asked by appellant.   The effect of the court's modification complained of was to require the jury, in determining whether appellant's property was damaged by said improvement, to consider it as a whole.   There was no error in this ruling.

The question for the jury to determine in this action was whether the value of the property was lessened or increased by reason of the improvement.   If there was no depreciation in the value of the property by reason of the improvement, then there was no damage to appellant and he was not entitled to a recovery.   It would not be a just rule which would permit a property owner to recover damages for the making of one portion of an improvement, when the fact is that the making of the improvement considered as a whole greatly enhanced the value of his property.   The cases cited by counsel for

appellant in support of their contention, were condemnation proceedings under the eminent domain act, where a special rule with regard to benefits being set off against damages is prescribed by the statute.

Here, the proceeding is a common law action, and none of the property of appellant was taken or entered upon, and the right of recovery depends altogether on the question of whether the improvement has depreciated the value of the property. The cases establishing this doctrine in this State are too numerous for citation.

It is further urged that the court erred in ordering a view of the premises by the jury against the objection of appellant.

It was said by this court in Doud v. Guthrie, 13 Ill. App. 653, after showing the improper conduct of the jurors, who were given a "view" in that case: "But aside from the improper manner in which the 'view' was conducted, we incline to the opinion that, in this State, it is not competent for the court to order a view against the objection of a party to the suit, except in cases where such view is authorized by statute, as in condemnation proceedings." The opinion thus expressed is supported by a consideration of some common law authorities, and reasons are given why views, unless regulated by statute, would necessarily give rise to many practical difficulties.

I am of opinion that Doud v. Guthrie was well decided on this point, and that it ought to be adhered to; but Mr. Justice Gary differs from me, and as now, since the recent and regretted retirement of Mr. Justice Garnett, there are but two judges in this court, a difference of opinion results in an affirmance of the judgment.

I have been induced, because of this difference of opinion, to examine the question with some care, and as a result, my opinion is strengthened and confirmed, that the court, in this State, has no power or authority whatever to order a view by the jury, in a common law action, against the objection of a party to the cause.

It is admitted that no such authority is given by statute, and therefore if the power exists at all, it must rest on the

Springer v. City of Chicago.

exercise of such a power by the courts of common law. There was a " view " by the jury known to the common law, but it was confined to certain real actions, and was not granted in personal actions. Upon this point there is a general concensus of all the authorities. Bouvier's Law Dictionary, title, " View ;" Rapalje's Law Dictionary, title, " View;" Anderson's Dictionary of Law, same title.

There were views by consent of parties, but that establishes nothing as to the authority of the court to order a view. A view by consent of parties may be had now; for what the parties agreed to, neither can complain of.

In Bacon's Abridgment, title " Juries," the actions in which view might be had at common law are enumerated, and it is said that because this right to view in the actions in which it was allowed, " was often used by the tenant for delay, and thereby the demandant greatly prejudiced," the statute of Westm. 2, c. 48, ordained " that from henceforth view shall not be granted, but in case when view of land is necessary, as if one lose land by default, and he that loseth moveth a writ to demand the same land," etc. The fact that this statute was passed, probably gives rise to the belief, rather indefinitely expressed in some authorities, that the granting of views was a matter of discretion with the court, in all actions prior to that statute; but an examination of the statute itself shows that it only attempted to confine the use of views to cases where they were *necessary* in the actions in which they were, at common law, allowable.

In the action of *trespass quare clausum*, where the title came in question, a view might be had at common law. In Kempster v. Deacon, 1 Ld. Raymond, 76, the question was whether the plaintiff should have more costs than damages, the judge having made no certificate that the title came in question, " and resolved *per curiam* the plaintiff shall have full costs; for it appears upon the record that the view was granted, but the view can not be granted unless when the title comes in question, and therefore the granting of the view amounts to a certificate that the title came in question." After the statute 4 Ann. c. 16, s. 8, a view was discretionary

and was usually granted as of course upon the motion of either party, and whether title was in question or not.    Flint v. Hill, 11 East, 184.    Of course the 4 Ann. is not in force in this State and our courts can derive no authority from its provisions.

That statute making it discretionary would seem a strong argument that it was not discretionary before.    In fact, there seems to me to be no good reason for surmising that ordering a view was a matter which grew up in the discretion of the court.    We find it strictly confined in common law to certain real and mixed actions, and it is impossible to say that it was not so confined by some statute, ancient and remote, all record of which is lost.    At all events no case is to be found in which the recognized and fixed limits within which the power was exercised at common law was transcended by the courts in England, and I am unable to conclude from the fact that the making of such an order was not a ground of error, that therefore the courts probably made such order in all classes of cases.    Such a view as was ordered and had in this case, I deem a dangerous and unauthorized innovation, serving no useful purpose, but on the contrary tending to confusion and uncertainty, and clashing directly with settled principles in our system of jurisprudence.    In order to make such a view useful the verdict of the jury should be made conclusive on all questions of fact, and not be subject to review by either the trial judge or an Appellate Court.    Such a view tends to make the jury (I quote the words of the Supreme Court of Iowa) "silent witnesses in the case, burdened with testimony unknown to both parties, and in respect to which no opportunity for cross-examination or correction of error, if any, could be afforded either party.    If they are thus permitted to include their personal examination, how could a court ever properly set aside their verdict as being against the evidence, or even refuse to set it aside without knowing the facts ascertained by such personal examination by the jury. It is a general rule certainly, if not universal, that the jury must base their verdict upon the evidence delivered to them in open court, and they may not take into consideration facts

known to them personally, but outside of the evidence produced before them in court." Close v. Saunn, 27 Iowa, 503. While, therefore, the view in this case may in fact have done no harm, it was an error to permit it against objection, and it is impossible to say whether it influenced the verdict or not. The rule of practice should be settled and maintained, and parties are entitled to have their cases tried without departure therefrom that may cause them injury. The result of a law suit is uncertain enough already without introducing a practice that will tend to increase instead of to lessen that uncertainty.

GARY, P. J. The most thorough examination of the old books of law, leaves it quite uncertain when a view by the jury would be allowed or refused at common law; but it is quite certain that the allowance of it grew up without statute, under the exercise of the discretion of the judge at *nisi prius*. Tidd and Tomlin cite as their authority 1 Burrows, 253, which is a note by Burrows, not a decision, based on no authority cited, stating that a rule for a view proceeded upon the previous opinion of the court or judge at the trial, "that the nature of the question made a view not only proper, but necessary." The granting or refusing a view at common law does not appear even to have come in question on error, or in any other mode of review, in England.

I hold, therefore, that as a view had its origin in discretion, granting a view is not error, *per se*, in any civil case. The conduct of it may be ground for a new trial, as in Doud v. Guthrie.

The statute provides for a view where the question for the jury is the injury that will accrue to private property, not taken but damaged, for public use, by an improvement to be made. If a view is helpful to the jury in such a case, as the legislative wisdom in effect says it is, will it be harmful where they are to ascertain the injury that has accrued by an improvement that is completed, and the effect is not merely in the mind's eye, but is visible to the physical one? At the worst I think a view is in the discretion of the court (Tudor Iron Works v. Weber, 129 Ill. 535), and not assignable as

error unless wrongly conducted, and then that conduct is the subject of inquiry. As we all agreed, while Judge Garnett was yet a member of this court, that there was nothing else wrong in the case, but in the limited time we had before the day fixed for his resignation to take effect, had not been able to reach a conclusion on this point, the result of a difference of opinion upon it between Judge Moran and myself, is the affirmance of the judgment of the Circuit Court.

*Judgment affirmed.*