COUNTY OF BIBB *v.* REESE.

</div>

1. In a suit against a county by the owner of property abutting on a public road, for damages to the property alleged to have been sustained by a change in the grade of the road, the plaintiff must show that the alleged change was made under the authority of the officers of the county who were empowered by law to do the work complained of.

2. The county commissioners of Bibb county, as successors in that respect of the ordinary, have exclusive control of the matter of changing the grade of public roads.

3. The law of England of force at the date of our adopting statute authorized the presiding judge, in real and mixed actions, to permit the jury, in his discretion, with or without the consent of the parties, to view the premises ; and there being nothing in the statute law of this State repealing this provision of the English law, it is still of force in Georgia.

<div align="center">Submitted March 1,—Decided April 26, 1902.</div>

Action for damages. Before Judge Nottingham. City court of Macon. March 1, 1901.

*Hardeman, Davis, Turner & Jones,* for plaintiff in error.
*Wimberly & Ellis,* contra.

SIMMONS, C. J.  Mrs. Reese brought her action against Bibb county, alleging that the officers and agents of the county had dam-

aged her by cutting down the road-bed in front of her premises in such a manner as to render ingress and egress impossible, and to greatly injure the value of her property. Upon the trial of the case the plaintiff proved that her property had been injured, and the jury returned a verdict in her favor for $1,500. The county made a motion for a new trial on various grounds, which was refused, and it excepted.

1. The motion complained, in substance, that the verdict was contrary to law, because the evidence did not show that the road was cut down by authority of the commissioners of roads and revenues of Bibb county, who alone were authorized by law to have such work done. It appears from the local legislation for Bibb county that the board of commissioners of roads and revenues of that county have the same power and authority in regard to working roads as the ordinary had under the constitution of 1868, and he had the same authority that was vested in the justices of the inferior court before the abolition of that tribunal by the constitution of 1868. We have carefully read the evidence in the record, and can find no testimony which shows or tends to show that the board of commissioners of roads and revenues as a body corporate ever authorized or ratified the acts complained of as forming the basis of the plaintiff's action for damages. It is true that the local act for Bibb county, approved December 12, 1871 (Acts 1871, p. 221), creates a board of road commissioners for that county, and they are given authority to repair and work the roads; but there is nothing in that act, or in any other to which we have been referred, which authorizes this board to grade a road in such a way as to damage abutting property owners. While the constitution declares that private property shall not be taken or damaged for public use without just compensation, the taking or damaging referred to must be by some authority empowered by law to do those acts; and before a recovery can be had against a county for taking or damaging private property, it must be shown that the proper authorities of the county were responsible for the taking or damaging, or that they ratified it after the property was so taken or damaged. The board of county commissioners of Bibb county, as the representative of the people of that county, and as the custodian of the public funds, is not liable for damages for any acts of a road overseer or a superintendent of roads which are not authorized or rat-

ified by it. Whoever seeks to recover damages from the county must show some statutory or constitutional provision which makes the county liable for the acts of which complaint is made. As Bleckley, C. J., remarked in the case of *Smith* v. *Wilkes County,* 79 *Ga.* 127 : "We can not suppose that there was any intention on the part of the framers of the constitution to turn the citizens loose against the counties, without any statutory regulation, for all such causes of action as would be recognized by holding that anybody who, in behalf of the public, damages another's property, thereby subjects the county to answer for it. It would seem altogether more reasonable to hold that, if one person damage another for the use of the public, the person who inflicted the damage should be responsible, and not the public, though benefited." It is true that in several cases this court has ruled that counties were liable for taking or damaging private property for public use, but in each of these cases it will be seen that the taking or damaging was done by the proper county authorities empowered by law to do the work as a result of which damages were claimed. No case, to our knowledge, has ever held a county liable for the unauthorized acts of a road overseer.

2. By the act approved February 6, 1873 (Acts 1873, p. 219), the board of commissioners of roads and revenues of Bibb county was given the same power in regard to the roads of the county that the ordinary had prior to the passage of the act, which was the same as that formerly vested in the justices of the inferior court; so that at present that board has exclusive power over the roads so far as grading and altering the same are concerned, that power never having been subsequently delegated to any other authority. This being so, neither the superintendent, overseer, nor special board of road commissioners for Bibb county had the right to cut down the road in front of Mrs. Reese's premises without authority from the board of commissioners of roads and revenues; and in the absence of such authority, it follows that the plaintiff can not recover from the county for the damages which she has sustained.

3. One ground of the motion for a new trial complains that the court below erred in directing, over objection of counsel for the defendant, that the jury be taken to view the premises alleged to have been damaged. It appears that, in compliance with a request

of counsel for the plaintiff, the court directed the sheriff and a bailiff to procure carriages and take the jury to the premises, the judge accompanying them in another carriage. This is the first time that the question here presented has ever been squarely before this court for determination. From an investigation of the subject we find that prior to the act approved February 25, 1784 (Cobb's Dig. 721), adopting as the law of Georgia the common law and such of the statute law of England, with certain exceptions, as was in force in the colony before the Revolution, it was the law of England that the judge, in all real and mixed actions, might in his discretion allow the jury to view the premises. The statute of 4 Anne, c. 16, § 8, recognized the right of trial by view, and prescribed the mode of procedure to be had therein. Considerable difficulty having been experienced through a misunderstanding of the meaning of the statute referred to, "in 1757, Lord Mansfield and the other judges took it upon themselves to remedy this state of affairs, and declared that they were clearly of the opinion that a view should not be granted unless the court were satisfied that it was proper and necessary." 26 Cent. L. J. 436. See also 1 Co. Lit. 158 b; 5 Bac. Abr. (title Juries) 372; Stearns on Real Actions, 102; 2 Tidd Pr. *796; Andrews Steph. Pl. § 109; 1 Thomp. Tr. §§ 875 et seq.; 22 Enc. Pl. & Pr. 1053 et seq.; Springer v. Chicago (Ill.), 35 Am. & Eng. Corp. Cas. 180, 186; and the well-written article in 26 Cent. L. J., above cited, in which the question is fully discussed and the authorities collected. It seems that at common law this right of the judge to permit the jury to view the premises existed only in real and mixed actions, and did not extend to personal actions and criminal cases without the consent of both parties. The legislature of this State having in 1784 adopted the common law of England as it existed prior to 1776, including this right of trial by view in the discretion of the trial judge, and no repealing statute ever having been passed, that law is still of force in Georgia; as much so as if the legislature had expressly enacted it. The present case being an action to recover damages to land, the trial judge had the right, with or without the consent of the parties, to direct the jury to view the premises. The reason for allowing the judge this authority is fully set out in some of the cases above cited, especially in the case of Springer v. Chicago, from the Illinois Supreme Court. But whatever the reasons may be, whether good,

bad, or indifferent, it is the law of this State, the courts are bound by it, and this court has no power to reverse a trial judge for adhering to it, unless there has been an abuse of discretion. It was, therefore, not error for the court below to allow the jury to view the premises in the present case.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*