## 1620.    JONES *v.* ROYSTER GUANO COMPANY.

1. In an action to recover damages arising from the maintenance of a continuous nuisance affecting premises occupied by the plaintiff as a home, depreciation in the market value of the property is not the only item of damage recoverable.

2. On the trial of such an action it is erroneous to instruct the jury that "if the plaintiff recovers at all in this case, he must recover because the market value of his property is lessened, and not for the reason that the occupant is inconvenienced, or that the comfort and use of his home is affected; and the difference between the market value of the property at the time the alleged nuisance was created, and the market value of the property after the creation of the alleged nuisance, is the measure of damages, and is the amount of damage that should be found, if any damage is found at all; all of which must appear from a consideration of the evidence adduced upon the trial of this case, the burden being upon the plaintiff to establish by the evidence that the market value of his property has been decreased by said alleged nuisance, that the market value of the property has been reduced after the creation of the alleged nuisance by reason of the erection, creation, and maintenance of the alleged nuisance;" especially where there is evidence from which the jury could infer that the maintenance of the nuisance had damaged the plaintiff's fruit trees, and killed and destroyed vegetation growing in his garden and fields, and had rendered his home almost uninhabitable by reason of the vapors, gases, and fumes escaping therefrom; and other evidence authorizing the inference that although there had been an increase in the market

value of the plaintiff's property since the creation of the nuisance, the increase was due to other causes than the maintenance of the nuisance, and that if the nuisance had not been created and maintained, the market value of the property would have shown a still greater increase.

3. Where it was claimed by the plaintiff that the defendant's guano factory, situated in the suburbs of a large city, within a few hundred yards of his home, was so maintained as to amount to a continuous nuisance, whereby his property had been damaged, it was erroneous to instruct the jury that "properly conducted, decently appointed factories erected in close proximity to residential quarters may cause great depreciation in value; in the popular sense they cause damage, but in such cases the annoyance, the inconvenience occasioning the loss in value, are not actionable, because they arise from lawful uses. The owners of the establishments are as much entitled to the use and enjoyment of their property as is the owner of the residence property reduced in value by their presence." This instruction, while correct as an abstract principle of law, was inapplicable to the case on trial, and operated to prejudice the jury against the plaintiff.

(a) The fact that the excerpt was taken verbatim from an opinion of the Supreme Court does not make the giving of it proper, especially where it is apparent that the Supreme Court used the language arguendo in the discussion of an entirely different question from any issue involved in the case on trial. See *Smalls* v. *State*, ante, 502.

4. There was no error or abuse of discretion in allowing the jury, over the plaintiff's objection, to personally inspect the premises and the factory involved in the controversy.

Action for damages, from city court of Macon—Judge Hodges. December 5, 1908.

Argued February 24,—Decided July 31, 1909.

Jones brought suit against the Royster Guano Company, seeking to recover damages for the erection and maintenance by the defendant of a fertilizer factory near his home in such a manner as to create a nuisance. He alleged, that he is the owner of a tract of about six acres of land upon which a house occupied by him as a home is located, in the suburbs of the city of Macon; that the defendant's factory is adjacent to his home, and that the materials used in the manufacture of fertilizers therein give forth such a stench and such disagreeable odors that it is impossible for him and his family to live in his home with any degree of comfort; that the odors and the gases affected the health of the members of his household; that the gases, fumes and other substances given forth from said factory killed and damaged all and every kind of vegetable life growing on his land, and greatly depreciated the value of his property; and "that by reason of the facts aforesaid

the property of your petitioner, which has been improved as a home as aforesaid, has been rendered almost uninhabitable, and that the market value of his said property has been damaged by the said F. S. Royster Guano Company as aforesaid, permanently, in the said sum of $1,999.00." By way of amendment it was alleged: "that the nuisance as carried on by the said defendant as aforesaid has materially decreased the rental value of said property, by reason of the noxious and offensive vapors, fumes, and gases coming from said plant as aforesaid; . . that the fumes, gases, and vapors arising from said plant of the said defendant are carried into the air and over on petitioner's said place, and the same settled on a very valuable peach orchard of petitioner's on said place, which orchard was worth at least $500, and said fumes, vapors and gases totally destroyed said peach orchard." By still another amendment the word "market" was stricken from the ad damnum clause of the original petition as here quoted. The trial resulted in a verdict for the defendant, and the plaintiff excepts to the overruling of his motion for a new trial.

From the evidence it appears that the plaintiff purchased his home about the time work on the factory started, probably a little while after, and has been living there ever since. His premises are about 400 yards north of the fertilizer factory, and, when the wind is from the south, the gases, fumes, and odors from the factory make his home so disagreeable and uncomfortable that it is necessary for the occupants of the house to go inside and close all the windows and doors; and at times even then the odors and gases penetrate the house and make it almost uninhabitable. The fumes and gases when breathed into the lungs cause coughing and sneezing; and sometimes at night, when the wind came from the direction of the factory, the members of his household found it almost impossible to sleep. One physician, who had practiced in the vicinity of the factory, stated that he had had cases in which people living there were affected with certain kinds of throat diseases caused by these gases; but there is no evidence that any member of the plaintiff's family was ever seriously troubled with any kind of throat disease. This physician testified that he lived about two miles from the factory, and when the wind came from that direction he noticed odors which came from the factory. The hydrochloric acid gas, sulphuric acid gas, fluorine gas, and other

gases generated in the factory killed vegetables in the plaintiff's garden, and corn and other crops growing in his field, and he had become discouraged and had stopped trying to grow anything on his land.   Just about the time the corn would begin to tassel it would be attacked by the gases and other substances from the factory and killed.   The flowers in the yard had been dwarfed and killed.   The person who owned the premises prior to its purchase by the plaintiff testified that he had always found the land very productive and had always had a very good yield from it.   There was evidence that people living near the factory had found the stench and odors so objectionable that they sold their places and moved away.   Decayed fish were used in the process of manufacture of the fertilizer, and the odor from this source was very unpleasant and objectionable.   When the plaintiff purchased the premises, there was a peach orchard on it of about 125 trees, and these were killed, as were also some others which he had purchased and planted.   He and other witnesses testified that pine trees around the factory,—some of them as far away as a quarter to a half-mile—were killed.   The plaintiff and his witnesses estimated that the presence of the factory had depreciated and damaged his property in all about three or four thousand dollars; that if the factory were not there his property would be worth three or four thousand dollars more than it is worth.

The defendant's testimony tended to show that this was one of the largest fertilizer factories in the southern States, and probably the best equipped.   It is equipped with the very best obtainable condensers for the purpose of preventing the escape of gases and fumes, and every possible precaution is taken to keep the factory from being objectionable and offensive to people living in the community.   It is absolutely impossible to condense all the gases, and, when the wind is strong, some of them escape into the surrounding atmosphere, and to some extent affect vegetable and plant life. There was other evidence flatly contradicting that offered by the plaintiff as to the extent of his damage, both as to the effect of the gases, fumes, and vapors on health and plant life, and the value of his property.   There was evidence from which the jury could infer that the factory had proven a great benefit to the community, increasing property values and also improving the health of the people in the community.   The defendant intro-

duced tax returns of certain property owners in that community, showing that some property in the neighborhood had been taxed at higher valuations year by year since the erection of the factory; but it does not appear what valuation the plaintiff had placed on his property during this period, whether he had been giving in his property at increased or decreased valuations. It is undisputed that property throughout the entire city of Macon and the county of Bibb has increased in value greatly during recent years, due in part to the natural growth of the city, and in part to general prosperous times throughout the State and country. The factory was erected in 1903, and suit was brought in 1906.

*Joseph H. Hall, Warren Roberts, M. Felton Hatcher,* for plaintiff. *Thomas B. West, Erwin & Callaway, Miller, Jones & Miller,* for defendant.

RUSSELL, J. (After stating the foregoing facts.)

1. It is insisted by the defendant that the plaintiff's petition should be construed as a suit to recover only permanent damages to the freehold, and that depreciation in market value is the only proper item of damages in such a suit. We think, however, that it sufficiently appears, from the allegations of the petition, that the plaintiff was suing for permanent damages to the freehold, and also for damages to the value of the use of the property during the period covered by the maintenance of the alleged nuisance. This is made particularly plain by the amendments offered, because he therein expressly disclaimed that he was suing for depreciation in the market value of the freehold. The premises were used by him for a home, and their use for that purpose had been practically destroyed by the alleged nuisance. In view of the purpose for which he used the premises, the value of the use could be measured by the results obtained from cultivation of the soil, and if, as he alleged, and as his proof showed, he was using the premises for the purpose of a home and also for growing vegetables and crops for his own sustenance and livelihood, and if the building of the factory and the maintenance of it so as to create a continuous nuisance had rendered his home uninhabitable. and made it impossible for him to grow crops of any kind on his land, he was being deprived of the use of his property; and he was seeking to make the defendant compensate him for the value of that use. The method by which the value of the use of the

property is measured in this instance is to show that if the plaintiff could use the property as he had been using it prior to the erection of the nuisance, he could grow crops and live in his home in some degree of comfort, but that the maintenance of the nuisance has destroyed the possibility of devoting the property to that use. The mere fact that he was willing to remain in the house, notwithstanding the great discomfort and annoyance caused by the nuisance, ought not to preclude him from recovering for damage inflicted by the wrongful act of the defendant. Nor is it a sufficient answer to this to say that the jury would not have any certain measure by which the damages could be found. As was said by the Supreme Court of the United States, "as with a blow on the face, there may be no arithmetical rule for the estimate of the damages. There is, however, an injury, the extent of which the jury may measure." Baltimore & Potomac Railroad Co. v. Fifth Baptist Church, 108 U. S. 335 (2 Sup. Ct. 719, 27 L. ed. 746). In that case the plaintiff sued the defendant for maintaining an engine-house and machine-shop on a parcel of land adjoining its church edifice, and so using them on Sundays and other days as to disturb the congregation assembled in the church, to interfere with religious exercises, break up its Sunday school, and destroy the value of the building as a place of worship. The following instruction was approved by the Supreme Court as being a correct statement of the measure of damages: "The actual amount of pecuniary loss to the plaintiff is not necessarily the rule of damages in actions like the present. In estimating the amount of compensation to the plaintiff for the injury, if any, found to have been sustained by it, the jury may determine the extent of the injury and the equivalent damages, in view of all the circumstances of said injury to said plaintiff, of depreciation in the value of its property during the period embraced in this suit, and of interferences with the uses to which said property was devoted by said plaintiff during said period, and of all other particulars, if any, wherein the plaintiff is shown to have been injured during said period. . . The suit is brought by a congregation duly incorporated, and they have brought an action to recover damages for their inconvenience and discomfort in consequence of the acts of the defendant. It is the personal discomfort more than anything else which is to be considered in regard to the assessment

of damages. Now, I can very easily imagine, and it may often happen, that the construction of an improvement such as this might increase the value of the property in the vicinity, and I am not sure at all that the erection of this workshop in that neighborhood may not really have increased the intrinsic value of the property belonging to the congregation. The evidence does not, as it seems to me, show that this property has been depreciated by the construction of that workshop. We can imagine, and it is not a far-fetched imagination either, that the effect of such a workshop in that neighborhood might be to collect a population around it, and thus increase the population in that neighborhood, and really enhance the value of the property; and yet the congregation would be entitled to recover damages (although their property might have increased in value) because of the inconvenience and discomfort they have suffered from the use of the shop. The congregation has the same right to the comfortable enjoyment of its house for church purposes that a private gentleman has to the comfortable enjoyment of his own house, and it is the discomfort which is the primary consideration in allowing damages." We do not mean to say that all of the items of damage mentioned in the foregoing instruction are recoverable under the law of this State, but certainly where the effect of the nuisance is to destroy the use to which the owner is devoting his property, he should be allowed to recover in damages the value of the use during the period of its destruction. In some cases the value of the use of the property is measured by its rental value; but where the owner himself lives in the house and cultivates the garden and the fields, and a nuisance is maintained at his very door, making his home uninhabitable and his fields unproductive, he should be allowed to recover the reasonable value of the use of the property for the purposes to which it is devoted. In the case of *Swift* v. *Broyles,* 115 *Ga.* 885 (42 S. E. 277, 58 L. R. A. 390)—a case by the way very similar in its facts to the case at bar, the Supreme Court said: "Undoubtedly, it was his [the plaintiff's] right to receive additional compensation for any annoyance or discomfort occasioned by the air in and about his dwelling-house being permeated with noisome gases and offensive odors discharged from the defendant's fertilizer plant. . . Where there is such a wrongful interference with 'the comfortable enjoyment of property by a

person in possession, no precise rule for ascertaining the damage can be given, as, in the nature of things, the subject-matter affected is not susceptible of exact measurement; therefore the jury are left to say what, in their judgment, the plaintiff ought to have in money, and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the nuisance.'" See also 29 Cyc. 1271; *Bohan* v. *Port Jervis Gaslight Co.*, 122 N. Y. 18 (25 N. E. 246, 9 L. R. A. 711); *Danielly* v. *Cheeves*, 94 *Ga.* 263 (21 S. E. 524); *Farley* v. *Gate City Gas Light Co.*, 105 *Ga.* 323 (31 S. E. 193).

2. Exception is taken by the plaintiff to the following instructions to the jury: "I instruct you that you should not consider in this case the effect smoke, fumes, odors, vapors, smells and the like might have upon the convenience of the plaintiff in this case, or the occupants of the premises, but smoke, fumes, odors, vapors, smells and the like are to be considered only so far as they affect the market value of the property; in other words, smoke, fumes, odors, vapors and smells may be considered by you in ascertaining whether the value of the property has been depreciated thereby; but if, from the evidence, it appears that the market value of the property has increased since the establishment of the alleged nuisance or has not decreased since the establishment of the alleged nuisance, there can be no recovery in this case. The difference in the market value before the nuisance complained of, and such value after the nuisance complained of is created, if you find it was so created, is the measure of damages in this case. . . I charge you further, that if the plaintiff recovers at all in this case, he must recover because the market value of his property is lessened, and not for the reason that the occupant is inconvenienced, or that the comfort and use of his home is affected; and the difference between the market value of the property at the time the alleged nuisance was created, and the market value of the property after the creation of the alleged nuisance, is the measure of damages, and is the amount of damage that should be found, if any damage is found at all; all of which must appear from a consideration of the evidence adduced upon the trial of this case, the burden being upon the plaintiff to establish by the evidence that the market value of this property has been decreased by said alleged nuisance, that the market value of the property has been

33

reduced after the creation of the alleged nuisance by reason of the erection, creation and maintenance of the alleged nuisance."

We think this instruction is an incorrect statement of the law. In the first place, it eliminated entirely from the jury's consideration damage to or destruction of the value of the use of the property during the period of the maintenance of the nuisance. The evidence on the part of the plaintiff of the destruction of his vegetation, crops, and fruit trees, and of the discomfort and annoyance caused to the members of his family, by the odors, gases, and fumes, would have authorized the jury to allow damages therefor. The contention of the defendant is that there was no evidence as to the value of these vegetables, crops, and trees, and therefore the jury would have had no criterion by which to gauge the amount of the damages; but an inspection of the brief of evidence reveals the fact that the plaintiff, after dealing in detail with the various items of damage which he had suffered through the maintenance of the alleged nuisance, was allowed to state that the total amount of his damage was between three and four thousand dollars. The defendant might have objected at the time to proving the total amount of damages in this way, and have insisted on a specific valuation as to the various items; but by failing to object he waived his right to a stricter method of proof. He might have, on cross-examination, examined the plaintiff specifically and gotten from him the information as to how much damage he claimed on account of destruction of fruit trees, how much on account of destruction of vegetables and crops, and how much on account of the injury to the use of his home for the purpose to which it was devoted, because of the discomfort caused by the gases, odors, and fumes. Furthermore, this instruction is tantamount to telling the jury that if the market value of the property had increased since the erection of the nuisance, they should bring in a verdict for the defendant. Of course this is not the proper measure of damages in a case of this kind. The increase in the market value of the property might be due in whole or in part to other causes than the erection of the factory, and certainly the plaintiff should not be deprived of the benefit derived from these causes. For instance, in this very case there was evidence that just about the time this factory was constructed and for several years thereafter, real-estate values all over the city had greatly increased, the increased

valuations being due in part to the natural growth of the city, and in part to a general revival of business and prosperity throughout the State and country. Could it be that the mere fact that the market value of the plaintiff's property had increased, not because of the defendant's factory, but in spite of it, should deprive the plaintiff of his right to claim damages for the still greater increase which would have taken place if the factory had not been there; or that the owner of the factory should be given the advantage of an increase in value due to the work of others? The whole idea and concept of damages · is that the defendant must compensate the plaintiff for the loss sustained through the breach of legal duty. And while increase in market value caused by the nuisance probably ought to be set off by the defendant, certainly it ought not to have advantage of increase in market value not caused by the nuisance but caused by the natural location of the property or the general prosperity and consequent advance in the value of real estate in the vicinity where the property is situated. Compare *Milltown Lumber Co.* v. *Carter,* 5 *Ga. App.* 334 (63 S. E. 270); *Central R. Co.* v. *Murray,* 93 *Ga.* 256 (20 S. E. 129); *Western & Atlantic R. Co.* v. *Tate,* 129 *Ga.* 526 (59 S. E. 266); *Louisville & Nashville R. Co.* v. *Kohlruss,* 124 *Ga.* 250 (52 S. E. 166). The defendant relies on the case of *Davis* v. *East Tenn. R. Co.,* 87 *Ga.* 605 (13 S. E. 567), as authority for the proposition that there can be no recovery in a case of this kind where there has been an increase in the market value of the property. That case holds that in an action by the owner of abutting property against a railway company for damage to the freehold and for diminishing the annual value of the premises for use, there can be no recovery as to the freehold where the market value has been increased; but as to the annual use, there may be a recovery notwithsanding such increase in market value. It is apparent from the opinion of the court, however, that the only increase in market value to be considered by the jury is the increase caused by the wrongful act complained of. For example, I may be the owner of vacant property in the suburbs of a city, and if the erection of a factory near my property has the result of increasing the value of my property, then I have not been damaged. But if a nuisance is created near my property, and proximately concurrently many valuable improvements are erected

nearby, and notwithstanding the presence of the nuisance my property gradually increases in value because of the growth of the city in that direction, or because of the return of prosperity and the consequent demand for real estate as an investment for idle money, and I can show that if it were not for the nuisance so created and maintained my property would show a still greater increase during the period in question, then I ought to recover from the owner of the nuisance (if entitled to recover at all) the difference between the value of my property as it stands and the value which it would have had if the nuisance had not been created and maintained, independently of the acts of others, not concerned in the maintenance of the nuisance. This is the only just rule; and while it may be difficult at times to arrive at proper criteria for the mathematical ascertainment of the exact amount of damages, this difficulty affords no reason for denying the efficient existence of the rule of law. As was said by the Supreme Court of the United States, it may be difficult to measure mathematically the amount of injury inflicted by a blow on the face, but the injury is inflicted, and the jury may take into consideration all the circumstances and arrive as nearly as possible at a just and correct result. The rule announced in the Civil Code, '§3907, that in some torts the amount of damages is left to "the enlightened conscience of impartial jurors," while there confined probably to torts growing out of wrongs different from that complained of in the case at bar, is nevertheless sound in principle, and in reason is just as applicable to the maintenance of a nuisance of the kind here complained of as it is to the instances there enumerated. The jury should not guess, nor arbitrarily fix the damages, but should estimate reasonably. The cases holding that where property has been condemned for public use under the power of eminent domain, the owner of the condemned property is limited to recovering the diminished market value thereof, are not applicable to suits for the erection and maintenance of private nuisances. The rule that private inconvenience must yield to the public good has not superseded the sound principle, as old as the year books, that every man must so enjoy his own property as not to injure that of another.

3. The undisputed evidence in this case shows that the factory was located some distance from the thickly populated section of the city, and that only a few residences were located in the vicin-

ity.   The judge charged the jury:   "I instruct you further that properly conducted, decently appointed factories erected in close proximity to residential quarters may cause great depreciation in value; in the popular sense they cause damage, but in such cases the annoyance, the inconvenience occasioning the loss in value, are not actionable, because they arise from lawful uses.   The owners of the establishments are as much entitled to the use and enjoyment of their property as is the owner of the residence property reduced in value by their presence."   From a close study of the instruction, it will appear that it correctly states in the abstract a principle of law; but under the peculiar facts of this case, it practically amounted to the direction of a verdict for the defendant.   From it the jury probably got the idea that it the defendant's factory was "properly conducted" in the popular sense, then there could be no recovery, however much damage the plaintiff may have suffered therefrom.   The instruction is taken in hæc verba from an opinion of the Supreme Court in the case of *Austin* v. *Augusta Terminal Ry. Co.,* 108 *Ga.* 671 (34 S. E. 852, 47 L. R. A. 755), which was a suit by the owner of property to recover damages caused by the tracks of a railroad company running in the rear of her premises.   The suit involved the construction of the clause of the constitution which protects private property from being "taken or damaged" for public purposes without just compensation; and in the discussion of the meaning of the word "damaged," which was inserted in the constitution for the first time in 1877, the court, through Chief Justice Simmons, said, arguendo, that the insertion of this word gave a cause of action against a public-service company only when a private corporation or individual would be liable for similar acts under like circumstances; and while discussing this question (upon which the court was divided), he used the language quoted above. The language is not suited or adapted to instructions to a jury. Judge Simmons was talking to lawyers, with keen, experienced, and discriminating legal minds, and not to jurors of ordinary intelligence and without great experience in making nice distinctions in the meaning of words and in semasiology.   A nuisance is defined to be "anything that worketh hurt, inconvenience, or damage, to another; and the fact that the act done may be otherwise lawful does not keep it from being a nuisance.   The inconvenience

518 JONES v. ROYSTER GUANO CO. [6 Ga.

complained of must not be fanciful, or such as would affect only one of fastidious taste, but it must be such as would affect an ordinary reasonable man." Civil Code, §3861. It is within the province of the trial judge to amplify and define this definition, but he should do so in language adjusted to the juror's power of comprehension. The code section purposely avoids specifics, for there is nothing so related to time, place, and circumstances as ·the question as to when a particular thing is or is not a nuisance. "Blackstone declared that if one fixes his habitation near a nuisance, he has no remedy for the damage which the nuisance causes him, on the ground of 'volenti non fit injuria.' This view has long been discarded, both in England and in this country. If one property owner, by devoting his premises to a particular trade, at a time when the surrounding property is vacant, can acquire a right to continue the business, however offensive it may be to dwellers coming into the neighborhood, then he has it in his power to virtually control the uses to which such property may be put, or to destroy its value. Nor is it any answer for the defendant, whose use of his premises amounts to a nuisance, that the place is a convenient one for him and for the public. 'In the eye of the law, no place can be convenient for the carrying on of a business which is a nuisance, and which causes substantial injury to the property of another. Nor can any use of one's land be said to be a reasonable use, which deprives an adjoining owner of the lawful use and enjoyment of his property.' " Burdick on Torts, 406.

· 4. The evidence was in sharp conflict as to every material issue in the case, both as to the manner in which the factory was operated and as to the extent of the damage suffered by the plaintiff in and around his premises. The defendant denied that the gases, fumes, etc., had killed any vegetation about the factory as claimed by the plaintiff's witnesses. Over the objection of the plaintiff, the judge allowed the jury to make a personal inspection of the defendant's factory and of the plaintiff's premises. The plaintiff excepts to this ruling. This was a matter resting in the sound discretion of the trial judge. *County of Bibb* v. *Reese,* 115 *Ga.* 346 (41 S. E. 636). Under the facts of this case, we can not say that the judge abused his discretion as to this matter.

*Judgment reversed.*