MOORE *v.* MACON COCA-COLA BOTTLING COMPANY.

No. 10263. FEBRUARY 16, 1935.

*R. Douglas Feagin, J. E. Feagin,* and *Joe Ben Jackson,* for plaintiff.

*Harris, Russell, Popper & Weaver,* for defendant. *Harold Hirsch* and *Marion Smith,* for persons at interest, not parties.

BECK, Presiding Justice. The Court of Appeals certified to the Supreme Court the following questions:

"1. In an action for personal injuries, in which the plaintiff charges that the defendant bottling company negligently allowed particles of glass to get into a bottle of coca-cola while the coca-cola was in the process of being bottled and capped, which particles injured the plaintiff by reason of his having drunk the contents of the bottle containing the same, is it proper for the court, on motion of counsel for the defendant, and over the objection of counsel for the plaintiff, to allow the jury to leave the court-room, in company with the sheriff, and inspect the premises of the defendant company and look at the machinery used by the defendant in bottling the coca-cola sold by it, it appearing from the defendant's motion that a view of the premises and machinery would aid the jury to better understand the testimony of the witnesses as to the kind and nature of the machinery used by the defendant and the method used by it in bottling such coca-cola, and that it was impossible to bring the machinery into the court-house? See *County of Bibb* v. *Reese,* 115 *Ga.* 346 (3) (41 S. E. 636) ; *Peterson* v. *Lott,* 11 *Ga. App.* 536 (75 S. E. 834) ; *Mayor &c. of Milledgeville* v. *Brown,* 87 *Ga.* 596, 599 (13 S. E. 638) ; *Broyles* v. *Prisock,* 97 *Ga.* 643 (3) (25 S. E. 389) ; *Johnson* v. *Winship Machine Co.,* 108 *Ga.* 554 (2) (33 S. E. 1013) ; *Central of Ga. Ry. Co.* v. *Dukes,* 134 *Ga.* 588 (3) (68 S. E. 321) ; *Linder* v. *Brown,* 137 *Ga.* 352 (73 S. E. 734) ; *Jones* v. *Royster Guano Co.,* 6 *Ga. App.* 506 (65 S. E. 361) ; *Smith* v. *State,* 11 *Ga. App.* 89 (6) (74 S. E. 711) ; *Massie* v. *State,* 24 *Ga. App.* 548 (2) (101 S. E. 703) ; *Atlanta Coca-Cola Bottling Co.* v. *Sims,* 43 *Ga. App.* 733 (160 S. E. 95) ; note, 60 A. L. R. 574 et seq.

"2. Where the evidence showed that in a bottled drink intended for human consumption broken glass was found when the bottle was opened and the contents were being drunk, and that it was dangerous and a menace to health and life, was it error for the court, in a suit against a bottling company for injuries alleged to have been sustained by reason of drinking a bottle of coca-cola containing particles of broken glass, to refuse to give in charge to the jury, after being timely and properly requested in writing so to

do by the plaintiff, the principle that 'where broken glass is found in a bottled beverage when opened after purchase from a retailer and while being drunk by the consumer, and there is proof that the bottle of beverage was in the same, condition as when the manufacturer delivered it to the retailer, the jury may draw an inference that the manufacturer was negligent in failing to perform his duty to exercise due care to see that the beverage was fit for human consumption?' "

■ We are of the opinion that the first question should be answered in the affirmative; and that it was not error for the court below, on motion of counsel for the defendant, and over the objection of counsel for the plaintiff, to allow the jury to leave the courtroom, in company with the sheriff, and inspect the premises of the defendant company and look at the machinery used by the defendant in bottling the coca-cola sold by it, where it appears, as recited in the question, from the defendant's motion that a view of the premises and machinery would aid the jury to better understand the testimony of the witnesses as to the kind and nature of the machinery used by the defendant and the method used by it in bottling such coca-cola, and that it was impossible to bring the machinery into the court-house. The soundness of the principle under which the jury is allowed to view the premises in cases where the evidence could be better understood has been recognized in most of the courts of this country. In *Atlanta Coca-Cola Bottling Co.* v. *Sims,* supra, it was said in the opinion by Judge Bell, now a member of this court: "By statute of Anne, enacted in 1705, it was provided that 'in any action brought in any of her Majesty's courts at Westminster, where it shall appear to the court in which such actions are depending, that it will be proper and necessary that the jurors, who are to try the issues in such actions, should have the view of messuages, lands, or place in question, in order to their better understanding the evidence that will be given upon the trial of such issues, in every such case the respective courts in which such actions shall be depending may order special writs of distringas or habeas corpora to issue, by which the sheriff or such other officer to whom the said writ shall be directed shall be commanded to have six out of the first twelve of the jurors named in such writs or some greater number of them at the place in question.' 4 Anne, c. 16, §§ 8, 11, Statutes at Large, 157. In 1757 it was

said by Lord Mansfield, that, even before this statute, 'the rule for a view depended upon the previous opinion of the court or judge, at the trial, that the nature of the question made a view not only proper but necessary; for the judges at the assizes were not to give way to the delay and expense of a view unless they saw that a case could not be understood without one.' 1 Burr. 252; 2 Wigmore on Evidence (2d ed.), 696, § 1164. Thus, the rule in England, whether founded upon the statute or the previous court practice, was that the court would permit a view or inspection by the jury only where it appeared to be proper and necessary to a better understanding of the evidence to be given upon the trial."

In *County of Bibb* v. *Reese,* 115 *Ga.* 346 (supra), it was said: "One ground of the motion for a new trial complains that the court below erred in directing, over objection of counsel for the defendant, that the jury be taken to view the premises alleged to have been damaged. It appears that, in compliance with a request of counsel for the plaintiff, the court directed the sheriff and a bailiff to procure carriages and take the jury to the premises, the judge accompanying them in another carriage. This is the first time that the question here presented has ever been squarely before this court for determination. From an investigation of the subject we find that prior to the act approved February 25, 1784 (Cobb's Dig. 721), adopting as the law of Georgia the common law and such of the statute law of England, with certain exceptions, as was in force in the colony before the Revolution, it was the law of England that the judge, in all real and mixed actions, might in his discretion allow the jury to view the premises. The statute of 4 Anne, c. 16, § 8, recognized the right of trial by view, and prescribed the mode of procedure to be had therein. Considerable difficulty having been experienced through a misunderstanding of the meaning of the statute referred to, 'in 1757, Lord Mansfield and the other judges took it upon themselves to remedy this state of affairs, and declared that they were clearly of the opinion that a view should not be granted unless the court were satisfied that it was proper and necessary.' 26 Cent. L. J. 436. See also 1 Co. Lit. 158 b; 5 Bac. Abr. (title Juries) 372; Stearns on Real Actions, 102; 2 Tidd Pr. *796; Andrews Steph. Pl. § 109; 1 Thomp. Tr. §§ 875 et seq.; 22 Enc. Pl. & Pr. 1053 et seq.; Springer *v.* Chicago (Ill.), 35 Am. & Eng. Corp. Cas. 180, 186; and the well-

written article in 26 Cent. L. J., above cited, in which the question is fully discussed and the authorities collected. It seems that at common law this right of the judge to permit the jury to view the premises existed only in real and mixed actions, and did not extend to personal actions and criminal cases without the consent of both parties. The legislature of this State having in 1784 adopted the common law of England as it existed prior to 1776, including this right of trial by view in the discretion of the trial judge, and no repealing statute ever having been passed, that law is still of force in Georgia; as much so as if the legislature had expressly enacted it. The present case being an action to recover damages to land, the trial judge had the right, with or without the consent of the parties, to direct the jury to view the premises. The reason for allowing the judge this authority is fully set out in some of the cases above cited, especially in the case of Springer v. Chicago, from the Illinois Supreme Court. But whatever the reasons may be, whether good, bad, or indifferent, it is the law of this State, the courts are bound by it, and this court has no power to reverse a trial judge for adhering to it, unless there has been an abuse of discretion. It was, therefore, not error for the court below to allow the jury to view the premises in the present case." And in *City of Atlanta* v. *Milam*, 95 *Ga.* 135 (22 S. E. 43), which was an action for personal injuries, it was said: "It appeared in this case that the obstruction over which the plaintiff fell had existed for a considerable time, and was located upon a portion of the sidewalk over which he had a right to walk. The evidence as to the dangerous character of the sidewalk was rather weak; so much so that we would very probably have set aside the verdict in the plaintiff's favor, had it not been for the fact that the jury, at the request of the defendant, were permitted to personally inspect the obstruction and form their own opinion concerning it by ocular demonstration. We are constrained to hold that they were better judges on the subject, after this opportunity of obtaining information, than we could possibly be from a mere paper report of the testimony introduced in the case. We will therefore allow the verdict to stand."

In 1765 Lord Mansfield laid down his rules to be followed in such cases. 1 Burrows, 252-3-4; 97 Eng. Rep. 299 et seq. Burrows' note contains no limitation upon the right of view, but on

the contrary contains this language: "As a view might be of use, and in this shape was attended with no delay and but little expense, it became the practice to grant them of course, upon the motion of either party." Several textbooks quote from and cite the cases from other jurisdictions in this country stating the general principle. We quote from 13 Encyclopedia of Evidence, 956: "In considering the various questions arising in regard to the view of premises or property by the trier of the facts, the fundamental conception of the view as being that process by which real evidence, otherwise inaccessible, is brought into the case, should be constantly borne in mind. In England,—'The right to order a view of the premises by the jury inhered in the court at common law, and seems to have been based upon the right of the jurors to use their personal knowledge in reaching a verdict.' In actual practice, the use of the view in the earliest times was apparently limited to real and mixed actions, but with the passage of the early statutes it came to be used in personal actions, . . although it could not be used in criminal actions without the consent of both parties." And this from 64 C. J. 87, § 90: "View and Inspection. At common law, the judge before whom the trial of an action is pending has discretion, not subject to review unless abused, to permit or refuse to permit the jury to view and inspect the premises or place or an article or object involved in the action; and the same is true under statutes authorizing the court to permit or direct a view when it is deemed proper or necessary."

In 2 Wigmore on Evidence, 690, § 1163, it is said: "Thus at common law there need be no limitations of the above sorts upon the judicial power to order a view. The regulation of the subject by statute, which began in England some two centuries ago, was concerned rather with the details of the process, than with the limits of the power. Statutes now regulate the process in almost every jurisdiction; but it may be assumed that the judicial power to order a view exists independently of any statutory phrases of limitation." In 42 L. R. A. 368, it is said: "While it is uncertain when a view by the jury would be allowed or refused at common law, the prevailing opinion seemed to be that views were sanctioned by common law practice, and that power to order them in civil actions rested in the sound discretion of the court to be exercised whenever, from the nature of the case, it became necessary

or important to a clearer understanding of the issues, and to enable the jury to properly apply the evidence. Vane v. Evanston, 150 Ill. 616; Springer v. Chicago, 135 Ill. 552, 26 N. E. 514, 12 L. R. A. 609, affirming 37 Ill. App. 206, overruling Doud v. Guthrie, 13 Ill. App. 659."

In Springer v. Chicago, supra, it was said: "If the parties had the right to prove by oral testimony the condition of the property at the time of the trial (and upon this point we think there can be no doubt), upon what principle can it be said the court could not allow the jury in person to view the premises, and thus ascertain the condition thereof for themselves? The premises, on view, may be regarded, as it is termed in the books, real evidence, and oral testimony in reference to the premises could not be as satisfactory in its character as the real evidence. . . Had a photograph or picture of the premises been taken, it would have been competent evidence to go to the jury. If a plat or a photograph of the premises would be competent evidence, why not allow the jury to look at the property itself instead of a picture of the same? There may be cases where a trial court should not grant a view of the premises, where it would be expensive or cause delay, or where a view would serve no useful purpose; but this affords no reason for a ruling that the power to order a view does not exist or should not be exercised in any case. . . In what cases a view was allowed at common law is a subject upon which the authorities we have examined are not very clear; but a view by jury, as we understand the subject, is sanctioned by the common-law practice. . . If at common law, independent of any English statute, the court had the power to order a view by jury (as we think it plain the court had such power), as we have adopted the common law in this State, our courts have the same power." In United States Cast Iron &c. Co. v. Granger, 172 Ala. 546 (55 So. 244), it was said: "The abstract, inherent power of a court to order a view, outside of the place of trial, of premises or objects involved in civil causes, existed at common law," citing Springer v. Chicago, and 13 Enc. Ev. supra; also 2 Elliott on Ev. § 1231; 1 Wharton on Ev. §§ 368 et seq.; Jones on Ev. § 404. "Whether the *view* moved for in such cases shall be granted or refused is a matter addressed to the sound discretion of the court, and when exercised will not be revised except in cases of abuse thereof." Numerous other authorities

might be cited, but it is not necessary. A large majority of them sustain the conclusions that we reach; that is, whether or not a jury should be sent out to view the place or view the premises where the injury happened, or the features of which are involved in the controversy, is a matter which rests in the sound discretion of the trial court, and the court's ruling in granting or refusing a view will not be reversed, unless under the particular facts of the case was some abuse of discretion on the part of the court. The right to view the premises is recognized, as we have shown, by the English law under the statutes of Anne and the decisions by the courts of that country.

In *Jones* v. *Roysler Guano Co.*, 6 *Ga. App.* 506 (supra), Judge Russell, now Chief Justice of this court, said: "The evidence was in sharp conflict as to every material issue in the case, both as to the manner in which the factory was operated and as to the extent of the damage suffered by the plaintiff in and around his premises. The defendant denied that the gases, fumes, etc., had killed any vegetation about the factory, as claimed by the plaintiff's witnesses. Over the objection of the plaintiff, the judge allowed the jury to make a personal inspection of the defendant's factory and of the plaintiff's premises. The plaintiff excepts to this ruling. This was a matter resting in the sound discretion of the trial judge."

■ Under the facts appearing in the evidence as recited by the Court of Appeals in the second question, the court did not err in refusing the request to charge the principle that "where broken glass is found in a bottled beverage when opened after purchase from a retailer and while being drunk by the consumer, and there is proof that the bottle of beverage was in the same condition as when the manufacturer delivered it to the retailer, the jury may draw an inference that the manufacturer was negligent in failing to perform his duty to exercise due care to see that the beverage was fit for human consumption." In *Palmer Brick Co.* v. *Chenall*, 119 *Ga.* 837 (47 S. E. 329), it was said: "Under our system, where every question of negligence is left for determination by the jury even in cases where the maxim under consideration is applicable, the judge should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them in clear and unequivocal terms that negligence must be proved, and it is for them to consider whether the manner of

the occurrence and the attendant circumstances are of such character that they would, in their judgment and discretion, be authorized to draw an inference that the occurrence could not have taken place if due diligence on the part of the master had been exercised."

*All the Justices concur, except*

Russell, C. J., and Bell, J., who dissent from the answer to the second question.