The Mayor and Aldermen of Milledgeville *v.* Brown.

There was no error in refusing a nonsuit, and the verdict was warranted by the evidence, the jury having inspected the premises. July 13, 1891.

Municipal corporations. Streets. Nonsuit. Verdict. Before Judge Jenkins. Baldwin superior court. January term, 1890.

Action for damages, by Miss Lucy M. Brown against the Mayor and Aldermen of the City of Milledgeville. The evidence showed as follows: Between seven and eight o'clock in the evening of the 31st of January, 1886, the plaintiff and Miss Stanley started from the house of Mrs. Garrett, on the south side of Hancock street in Milledgeville, to go to the house of Mrs. Crawford, on the north side of that street and just opposite the end of Liberty street where it intersects Hancock. They went east down the sidewalk to the middle of Liberty street, a point nearly opposite Mrs. Crawford's; did so to get the benefit of the lamp at the southeast corner of Hancock and Liberty streets, which was the nearest lamp to the mouth of the culvert to be referred to. When they reached the middle of Liberty street, they turned and started across Hancock street, the plaintiff a little in advance, going towards the light they saw in Mrs. Crawford's house. There was no crossing at this place; the sidewalks did not extend across. When near the

north side of Hancock street, at a point between the road-bed and the sidewalk, the plaintiff fell four or five feet from the top of a culvert into a sewer. It had been raining and was cloudy, and the streets were muddy. The culvert was a covered drain about three feet high and four feet wide, under Hancock street, connecting the underdrain north with that south of Hancock street. The bottom of the culvert was about five feet below the surface-bed of the street. A semi-circular brick wall four feet high, its top flush with the street, protected the mouth of the culvert, holding up the earth of the street and facing towards the north sidewalk. A surface-drain one and a half to two feet deep and six to fifteen feet wide, sloping to the middle, separated the street from the sidewalk and emptied into the culvert over a convex funnel of brick and cement descending to its mouth. It was upon this funnel, four feet lower than the wall, that plaintiff fell. The culvert is in line with the surface-drain of Liberty street; and Mrs. Crawford's gate is west of the culvert and opposite the southwest corner of Liberty and Hancock streets. The culvert is an excellent piece of work, and has been in its present condition for many years; it carries off a great deal of water. The city is built on very broken and precipitous ground, there being necessarily many abrupt places, banks, etc., where one might fall and be hurt. The plaintiff was twenty-four years old, and was acquainted with the place in question, knew it was there, and was looking out for it when she fell. She was under the impression that the wall or end of the culvert over which she fell projected a few inches above the ground, and expected to feel that with her feet and be warned of the danger. Very little or no light from the lamp across the street shown on this sewer. For two years she had been living in Macon, and was back to Milledgeville on a visit. The last time she remembered

to have seen the culvert before she fell, the bricks were elevated above the ground; and she was feeling for them when she fell.   There are no foot crossings over Hancock street nearer than the two streets parallel to Liberty which intersect Hancock.   To go from Mrs. Garrett's by one of these crossings would require a walk of nearly 500 yards, by the other 250 yards; while it was but about 80 yards the way plaintiff went.   By going directly across the street from Mrs. Garrett's, she would have avoided the culvert, and would have had to walk no further than she did.   She might have crossed safely a few feet east or west from where she fell.   The surface-drain on the north side of Hancock street is broad and shallow, bad for crossing, though wood wagons do cross it with safety.   A female witness fell at the same place some time after plaintiff did, but from the opposite side—from the sidewalk, and before she reached the masonry leading to the mouth of the sewer; she was not injured from this fall.   The plaintiff was badly hurt, and she testified that she was permanently injured.   She suffered great pain, and was confined to her bed four or five weeks, and it was still longer before she could leave her room.   Her hip was dislocated by the fall, and was replaced by a physician. She was a strong and healthy woman before the fall; has to work for her living, but cannot do half as much as she could before.   Her father was an old man, and she rendered material aid to him in his work.   At the time of the injury she was making eight to ten dollars per week; but afterwards, on account of her health, she was forced to decline to do work she had been doing before.   Her physician did not know that she received any permanent injuries.   About two years after the accident he treated her with electricity for pains in hip and back; he could not say that these pains were the result of the fall into the sewer—they may have been—

he could not tell; he had known such pains so produced. No bones were broken by the fall, "only a tendon that held the joint in place."

The defendant moved for a nonsuit, which was refused. At the instance of counsel, assented to by both sides, the court permitted the jury, before argument was begun, to view and examine the place where the injury occurred. They found for the plaintiff $500. The trial took place on the 28th of January, 1890. The defendant moved for a new trial, on the ground that the verdict was against the law and the evidence. To the overruling of this motion and of the motion for a nonsuit exceptions were taken.

C. P. CRAWFORD and R. W. ROBERTS, for plaintiff in error.

W. A. LOFTON, by brief, *contra*.

LUMPKIN, Justice.

The only question to be determined in this case is whether or not the verdict was authorized by the evidence. The facts will appear in the reporter's statement. Among other things, it was proved that the city authorities of Milledgeville permitted a sewer to remain open for years on one of the principal streets, and in a neighborhood lighted so dimly and imperfectly that the light was of little benefit to any one passing that way at night. The jury, with the consent of counsel for both sides, were permitted by the court to visit the scene of the accident and make a personal inspection of the same for themselves. We think this was a good practice, as it must undoubtedly have materially aided them in arriving at a correct conclusion as to whether the city authorities were negligent or not. In view of the testimony, and of this personal examination by the jury of the open sewer, we cannot say they erroneously found that defendant was negligent, or that the court abused its discretion in allowing their verdict

to stand. There was evidence to show that the plain-tiff was familiar with the locality, and it was contended that by reason of this familiarity she could, by exercising proper diligence, have avoided the injury. But there was also evidence to show that since the last time she saw the place of the accident, there had been a change in the condition of the open sewer. She had been absent from Milledgeville two years. At the time she left, the brickwork of the sewer projected some inches above the ground, but when she was injured, it was on a level with the surface of the ground, a circumstance which misled her, and to some extent contributed to the injury. Doubtless the court charged the jury upon the law of contributory negligence, and the amount of the verdict would seem to indicate that the jury considered this in making their finding. In view of all the facts, we see no reason to interfere with the discretion of the court below in upholding this verdict. The judgment is therefore                    *Affirmed.*