22509. PORTER *v.* GEORGIA POWER COMPANY.

Decided February 24, 1933.  Rehearing denied March 4, 1933.

*Hall, Grice & Bloch, Hines & Carpenter,* for plaintiff.

*Colquitt, Parker, Troutman & Arkwright, Sibley & Allen,* for defendant.

Sutton, J.  C. C. Porter brought suit for damages in Baldwin superior court against the Georgia Power Company, which company furnished electrical power to operate the Porter Brick Company plant, and alleged: that a fire of electrical origin destroyed his brick plant on February 7, 1930, thereby damaging him in the sum of $40,000.  He alleged that the defendant, in supplying him electric current, carried 2,300 volts over its transmission lines from its generating plant to a pole about five feet from the outside wall of the brick manufacturing plant, and at this place three fuses and three transformers were installed, the purpose of the transformers being to reduce or step down the high voltage current to 550 volts; that two conduit lines (hollow iron pipe) extended from the low side of these transformers on the pole down to the ground and were then laid under the ground and the wall of the building to a point directly under the two starter boxes, and then up to said starter boxes in the brick machinery building; that in said conduit lines were the feed wires which extended from the transformers to the starter boxes, and from them to the motors, which operated the machinery in the brick plant; that said conduit lines were of inferior metal and not suitable for this purpose, and that the insulation on the wires in said conduits was not covered by lead sheathing or casing, as it should have been, to protect it from moisture, causing decay; that two of the fuses on the high side of the transformers had become defective, and the center transformer was defective in its winding and wiring; and that there were no fuses on the low side of the transformers, to blow and cut off the current in the event of a short or ground on the line between the transformers and the starter boxes. Plaintiff alleged that the defendant company was negligent in maintaining and operating the electrical appliances installed by it (or its predecessor) in his brick manufacturing plant in the above manner and in such a way as to cause a short circuit, or a ground, or both, which communicated the fire to his property.

The defendant answered and denied the allegations of the petition. By agreement of the parties, the case was tried before the presiding judge, without the intervention of a jury, and he rendered a finding and judgment in favor of the defendant, holding that in his opinion the fire was not of electrical origin; and to this judgment the plaintiff excepts.

We have carefully read and considered the entire record in this case, and have also examined the physical evidence introduced and brought before this court. The evidence is voluminous, and the court can only refer to certain portions of it in this opinion. There were two buildings, the dryer and the machinery building. The electrical equipment was installed only in the machinery building, and the plaintiff contends that a short or ground, or both, in one of the conduit lines, due to improper installation or negligent operation, caused the fire.

Josh Vassar testified for the plaintiff, in part, as follows: I remember the night of the fire at the brick-yard. I was firing the dryer out there. It was a fair night. The brick machinery building was back to the side of the dryer. When I was firing the furnace I was standing on the concrete runway. No fire got out from my furnace that night, nor from the chimneys. The first notice I had of anything being wrong was that flash. It came out from the front. I don't know whether it came from the post or back in there where the fire was. It was a white flash, sort of like lightning. I stopped and looked, and after awhile saw it again, and I went out the back way and came down and when I came down there I saw that blaze, that blue and red blaze shooting up there side of the building, and I went on up to the house and got Mr. Harshbarger. That fire started there at that wire. That first flash came from that wire. It seemed like this flash was on that post, up there where those fuses were, and when I looked again it flashed again.

J. T. Smyly, a practical electrician of twenty-five years experience, testified for the plaintiff, to the effect that it was proper for wires in a conduit to be lead covered, as rubber insulation would soon wear off and give trouble. Upon exhibiting to this witness the parts of the conduit pipe in evidence in this case, the witness stated that certain holes and torn places therein came from an electric weld fire inside the pipe, and that a fire from the outside could not produce such a result.

S. H. Harshbarger, who was manager of the plaintiff's plant at the time of the fire and lived near the plant, testified in part: The fire started somewhere around two thirty. Josh Vassar, the night watchman, notified me. When I got down there I found the outside wires on the pole leading to the transformers arcing, and Josh was pouring water on them. I remember sometime previously there was a defective fuse or switch on the high side of the transformers, and the attention of the defendant's agent was called thereto. The building containing the machinery was near to the dryer, separated only by a narrow-gauge road. When I first got there I just noticed the wires arcing outside of the big switches, and I went on around and found the lower starter-box burning; that fire was inside the building.

T. E. Smith, an employee of the plaintiff, testified, in part, as follows: I pulled those fuses at the end of the day's work. I pulled these two switches at the two starter-boxes at the end of the day's work immediately preceding the fire. There were no fuses on the switches on the low side. This witness testified as to a defective fuse before the fire, and as to other matters, but did not testify as to the cause or origin of the fire.

George P. Rankin Jr., assistant city electrician of Macon, testified for the plaintiff, in part, that he was out at the brick plant after the fire and examined the transformers, feeding wires, cables, wires throughout the conduit lines, and other things connected with electrical installation. He testified that the wires in the conduit pipes were insulated with rubber and were not as required by the National Electric Code, the requirements of which were supposed to be observed by the defendant. Such wires should have been lead covered to protect them from moisture, which causes decay and produces shorts and grounds. He testified that there were no fuses on the short side of the transformers. When exhibited the conduit pipes in this case, with the holes and tears therein, he said, "Nothing in the world would do that except an acetylene blowpot and weld, and that is what it had, a welding machine inside." He further testified: "I have seen conduit pipe such as this melt up and bend and twist, but never saw any hole in it like that from a general fire. I would not want to say that this fire was caused by defective installation of electric equipment or was caused by electricity, but there is enough evidence there that the fire could have started from that, but I would not say it did."

Clifton Adams testified for the plaintiff that he had been engaged in the electric business for fifteen or more years, and he installed the electric equipment in the brick machinery building, from the low side of the transformers into the plant and to the starters; that the conduit and wire were furnished by Porter or witness, and the conduit was the right kind and the wire was the proper kind of wiring to be used from the low side of the transformers and through and in the conduit, and this was all properly installed in the plant; and the fuses or switches were put inside the building between the starter-boxes and the transformers. He further testified that he was paid by the Milledgeville Power Company for this work, or the best he could remember he was, but was not sure who paid him.

Mrs. C. H. Harshbarger testified for the plaintiff that she lived near the brick plant at the time of the fire, that Josh Vassar called and notified her and her husband of the fire, that they went as soon as they could get dressed, that she carried her husband in the car and turned around just before getting to the plant and went back for more help to fight the fire, that it looked like the back part of the machinery building was burning, and when she notified the others and got back the machinery building was burning, and that she was not just sure what all was burning, but that the wires were popping and snapping, making it dangerous.

I. N. Lozier testified for the defendant that he was manager of the Milledgeville Lighting Company (predecessor of the Georgia Power Company at that place), and that he had the wiring and the installation of the electrical equipment at the Porter Brick Company plant made and completed to the low side of the transformers, that Porter had the wiring done from the low or secondary side into the brick plant, that they made no contract with Porter for this part of the work, but that Clifton Adams did it for the plaintiff, and that the power company made no agreement to inspect, maintain, or keep this wiring up for Porter.

A. C. Henderson, superintendent of the power company at Macon, testified that wiring and installation of electrical equipment from the low side of transformers were always made by the customer, and that the power company did not do this and did not keep and maintain the same, that he tested the transformers after the fire and found them in good shape, that the Georgia Power Company does not go by the National Electric Code, and that after

the fire the bushing and porcelain of the transformers were damaged, but the wiring was not.

Mr. Collins testified for the defendant that he built a shed of timber over the dryer and one over the machinery building, that Mr. Bowden of Macon covered it, that the eave of the dryer came out even with the top of the machinery cover, and it was planked up from the dryer cover to the top of the machinery cover, and that it had a metal roof over it.

T. F. Johnson, an expert witness for the defendant, testified as to the proper installation of electrical equipment, fuses, wire, transformers, and different conditions resulting from shorts and grounds, and that after inspecting· and looking the conditions over at the plant after the fire, he did not think that the fire was of electrical origin; giving the facts on which he based his opinion.

C. A. Amonson testified for the defendant that he was in the employ of the plaintiff, that he lived within sight of the plant, that he went down there the morning of the fire, that the first he knew of it was when Mrs. Harshbarger notified him, that she told him the plant was on fire and to go down there, that he went immediately, that the fire was burning at the back end of the dry kiln when he got there, that there was no other fire whatever when he got there except that, that they got the hose and connected it together in order to get water, and there was none in the tank, and there was not a bit of fire in the machinery part of the plant when he first got there.

F. S. Tolbert testified for the defendant that he lived near the Porter brick plant, that he was down there the night of the fire, that he heard an automobile horn blowing that night and it woke him up and he went to the fire, that when he first got there the fire was burning over the dryer, the dry kiln, about half way back, that there was not any fire in the machinery part of the plant then, that they tried to get things out of the machinery plant, that it was half an hour or more before the fire got to the machinery plant, that he knew where the starter-boxes were, and that when he got there there was no fire around the starter-boxes or in the machinery plant.

G. S. Atchinson testified for the defendant that the sheds over the dryer and machinery plant were constructed with yellow pine timber.

H. L. Wills, assistant to the vice-president and general manager

of the Georgia Power Company, testified in behalf of the defendant that he had been in electrical work constantly since 1884, and with the defendant and its predecessors since 1902. He testified as to the insulation of wires in conduit pipes, that he visited the Porter brick plant, that he looked at the kind of installation there, and it was an overhead cut-out, that the conduit and installation was the kind used in 1926 and is the kind still in use; that it was the proper kind of installation; that a test of the transformers was made after the fire, and it showed that they were working properly, that where there is a short circuit and a ground the current does not flow beyond that; that the defendant never does put any fuses on the low tension side, and that this is true of power companies generally. He further testified that if there is a ground and a short circuit before getting to the switch and starter-box, no electricity would go beyond that, that he has had considerable training and experience in electricity, that whether or not a short in a conduit could make a hole in the metal conduit, he could not visualize its burning beyond the point of ground and short, that if you have a ground, the damage will go one way as against the other, that when a wire with the insulation destroyed comes in contact with the conduit, that is a ground, and that there would not necessarily be any disturbance, that if there was a disturbance it would flow back to the source and not beyond the ground. This witness then testified that the holes and melted places in the pieces of conduit pipe put in evidence by the plaintiff could have been caused otherwise than by an electrical short or ground inside the pipe.

The controlling question in this case is whether or not the fire was of electrical origin. There was evidence on both sides of this question. As above stated, there were two buildings involved in the fire at the Porter Brick Company plant, the dryer and the machinery building. The electrical appliances were installed in the machinery building, but there was no electrical equipment or current used in the dryer building. These buildings were within a few feet of each other, and the plaintiff contends that the fire started in one of the conduit lines in the machinery building. Some of the witnesses, who first reached the scene of the fire, testified that the back portion of the dryer building was on fire, and that there was no fire in the machinery building, when they first got there, but that the fire spread to the machinery building some thirty minutes later.

From an examination of the physical evidence, it seems probable that the holes in the conduit pipe were burned from inside the pipe; but whether the fire that destroyed the brick plant originated from a short circuit or ground in the conduit line on account of some defect in the electrical appliances in question, or whether the fire originated from some other source and the fire in the burning building was communicated to or affected the electrical equipment, causing a short or ground, which produced the burned condition of the conduit pipe and wire, was one of the questions determined by the trial judge, who passed on the weight of the evidence and the credibility of the witnesses. The parties agreed for the judge to visit the plant and premises of the Porter Brick Company during the trial, to make a personal observation and inspection. The trial judge, sitting without a jury, after hearing the evidence and inspecting the premises where the fire occurred, found in favor of the defendant. There being evidence to support this finding, this court is without authority to interfere with the judgment. *Chapman* v. *Chatman,* 34 *Ga.* 393, 395; *Bunn* v. *Hargraves,* 3 *Ga. App.* 518 (4) (60 S. E. 223); *Wilson* v. *Barnard,* 10 *Ga. App.* 98 (8) (72 S. E. 943); *Collins* v. *Broom,* 21 *Ga. App.* 420 (94 S. E. 645); *Townsend* v. *Hames,* 40 *Ga. App.* 834 (151 S. E. 665); *Mayor &c. of Milledgeville* v. *Brown,* 87 *Ga.* 596 (13 S. E. 638); *City of Atlanta* v. *Milam,* 95 *Ga.* 135 (22 S. E. 43); *A. & W. P. R. Co.* v. *Mims,* 122 *Ga.* 422 (50 S. E. 137).

. *Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*