29695. CLAXTON COCA-COLA BOTTLING CO. *et al. v.* COLEMAN.

Decided November 12, 1942.

*P. M. Anderson,* for plaintiffs in error.

*H. H. Elders, R. N. Odum,* contra.

Sutton, J. This was a suit by E. Z. Coleman against the Claxton Coca-Cola Bottling Company and H. D. Davis for damages alleged to have been sustained by the plaintiff as a result of his drinking a portion of a bottle of unclean and polluted coca-cola.

It was alleged that the plaintiff purchased from the defendant Davis at his place of business a bottle of coca-cola which was manufactured and bottled by the bottling company, and that when he opened the bottle and drank a portion of the contents thereof he discovered that there was something wrong with it, and upon examination found that the bottle of coca-cola had in it a considerable quantity of kerosene and pine needles; that shortly after drinking the coca-cola he became ill, suffered severely from nausea for several days, and was confined to his bed for two weeks as a result of drinking the coca-cola, and that he also suffered severe pains in his stomach and that his heart was seriously affected as a result of said illness; that he was wholly unable to do any work for a period of two months, and on account of his pain and suffering, loss of time, permanent impairment of his health, resulting from his drinking the polluted coca-cola, all of which was caused by the alleged negligence of the defendants, he sued for a stated sum in his petition. It was illeged that the bottling company was negligent in failing to properly clean and sterilize the bottles in which said product was contained, in using and filling a bottle with said product that had not been properly cleaned and sterilized, in furnishing to their customers for sale to the public a product that was unsanitary, unclean, and polluted as set forth in the petition, and that the said bottling company knew or could have known by the exercise of ordinary care and diligence that said coca-cola was thus unsanitary, unclean, and polluted. It was alleged that the defendant Davis was negligent in selling and offering for sale a product that was unclean, polluted, and unsanitary, and in failing to ascertain, before offering the said bottle for sale, that it was unclean, polluted, and unfit for consumption.

The defendants demurred generally and specially to the petition. The demurrers were overruled, and the defendants filed exceptions pendente lite to the judgment overruling the demurrers. The defendants filed an answer, denying liability. The case was tried and resulted in a verdict and judgment for the plaintiff.

1. No question is presented for decision by this court by the exceptions pendente lite to the judgment overruling the defendants' demurrers, as there is no assignment of error in the bill of exceptions on the exceptions pendente lite nor upon the rulings complained of therein, although the exceptions pendente lite are

specified in the bill of exceptions and sent up to this court as a part of the record in the case. *Virginia Lumber Cor.* v. *A. C. L. R. Co.,* 46 *Ga. App.* 534 (168 S. E. 323); *McDuffie County* v. *Gunn,* 50 *Ga. App.* 198 (177 S. E. 363); *Lanier* v. *Council,* 179 *Ga.* 568 (176 S. E. 614); *Allen* v. *E. Mason Roberts Enterprises,* 181 *Ga.* 99 (181 S. E. 578); *McIntire* v. *McQuade,* 190 *Ga.* 438 (9 S. E. 2d, 633), s. c. 63 *Ga. App.* 116 (10 S. E. 2d, 233).

2. The assignment of error in the bill of exceptions is to the judgment overruling the defendants' motion for new trial, which contained only the usual general grounds. So, under the record as here presented, the question for determination is whether or not the verdict was authorized by the evidence. To determine this question it will not be necessary to set out or refer to all of the evidence, but only to certain portions of it.

There was testimony by the plaintiff that he lived at Cobbtown, Georgia, and that the defendant, H. D. Davis, operated a mercantile store there, and that he often bought coca-cola from him and that Davis bought his supply of coca-cola from the bottling company; that about 6:30 in the morning on November 1, 1940, he went to Davis's place of business and bought a bottle of coca-cola from him, and that when he had drunk about a third of the bottle of coca-cola he discovered that there was something wrong with it and called Davis's attention to it and told him there was something wrong with it, that it tasted like kerosene, and that Davis told him to set the bottle down, which he did; that he became nauseated immediately after drinking the portion from the bottle of coca-cola, and that he went to breakfast in about thirty minutes or so, but was not able to eat any breakfast, and that he was nauseated and vomited for some two or three days and was unable to eat anything during that time; that he did not examine the bottle at the time of drinking the portion therefrom but went back to the store in a short time thereafter and examined the bottle and it smelled like kerosene and had pine needles in it, and Davis said to him at that time "Look what you have drunk off of;" that he left the bottle and its contents with Davis and asked him to keep it for him. He testified that as a result of drinking from the bottle of coca-cola he was very sick for some two or three weeks, that it affected his heart, and that he was unable to do any work for a period of some two or three months thereafter, and that he

went to see Dr. Strickland and received medical treatment from him.

Ouida Mae Buckner, an employee at Davis's store, testified for the plaintiff that she was working for Davis on November 1, 1940, and that she got to the store that morning a few minutes after the plaintiff had drunk from the bottle of coca-cola in question; that Davis showed her the bottle that the plaintiff had drunk out of, and that there were pine needles in it and it smelled like kerosene; that she was well acquainted with the plaintiff and knew that he was sick after drinking from the bottle of coca-cola and that he was unable to do any work for some time thereafter.

There was testimony by other witnesses for the plaintiff as to his illness and incapacity to work during the period that he claimed to have been incapacitated as a result of drinking from the bottle of coca-cola in question.

C. D. Jones testified for the defendants to the effect that he was one of the operators of the bottling company, and that he had been engaged in the coca-cola bottling business for a number of years; that he had been in a number of plants and was well acquainted with the methods and means of manufacturing coca-cola in the general section in which the defendant bottling company was located; that their methods and means of manufacturing coca-cola at the defendant bottling company's place of business are as good as any plant's and superior probably to the general method; for example, at this plant they gave double inspection and some plants only gave single inspection. He testified in detail as to their means and method of manufacturing and bottling coca-cola at their plant in Claxton—that they used modern methods and the latest improved machinery at their plant. But he admitted on cross-examination that no machinery is perfect, and that, while they had two inspectors as an additional safeguard to the machinery, it was possible that something could be in a bottle and be missed by double inspection.

E. L. Tippins testified for the defendants to the effect that he was engaged in the manufacture of coca-cola, and that he had been so engaged for many years; that he had visited and inspected a number of plants, and that the method used at the defendant bottling company's plant was just as modern as it could be; that he knew of no machinery that would make their product any better

for the public use than the machinery that was being used at the Claxton plant. He testified that he did not claim that their machinery or laborers were perfect, but did claim that their washing and brushing process would destroy loose pine needles in a bottle, and that if the pine needles were in the bottle in question when it reached the customer the bottle had been tampered with after it left their plant, and he testified that in his opinion it was physically impossible for the pine needles to have been in the bottle of coca-cola as claimed by the plaintiff.

Hinson Griner and Kelly Ricks both testified that they had been working for the bottling company for a number of years inspecting bottles and were so working at the time the bottle in question was manufactured or filled, and that they believed it almost impossible for the bottle in question to have passed by them with the alleged foreign matter in it without their having discovered it. But each of these witnesses testified that sometimes, though seldom, it was necessary for him to get some one to take his place in the inspection of the bottled coca-cola, and, of course, did not know what took place while he was not on the job.

Dr. L. V. Strickland testified that he was a practicing physician and that Mr. Coleman, the plaintiff, went to see him and complained of nausea and weakness along about the time the plaintiff claimed he drank the contaminated coca-cola, and to the best of his recollection he gave him a laxative and something to help the nausea and some kind of a heart stimulant; that if the bottle of coca-cola contained pine needles and a quantity of kerosene at the time the plaintiff drank from it, it might have caused him to be in the condition that he related to the witness; that if he drank enough of it to poison his system it would likely be depressing on his heart and poison his kidneys.

The bottle of coca-cola was introduced in evidence. The plaintiff testified that he bought the coca-cola from Davis, and that Davis was the only one present at the time he drank the contents, and that Davis was then present in the court room. At the request of the defendants, the jury was permitted by the court to visit the bottling company's plant and there observed the manner and method of the company in bottling its product.

So, it will be seen that the jury was authorized to find that the plaintiff bought a bottle of coca-cola from the defendant Davis at

his store, which was manufactured and bottled by the defendant bottling company and sold by it to Davis for his retail trade; that the contents of the bottle were contaminated with foreign matter, kerosene and pine needles, when he bought it, and that he was made ill by drinking a portion of the contents of the bottle; that he was confined to his bed for two weeks and was unable to do any work for some three months as a result of his drinking the polluted coca-cola; and that the bottle of coca-cola was kept by Davis and was produced by him in court and was introduced in evidence. It is true that the bottling company introduced evidence to show that modern methods and machinery were used by it in manufacturing and bottling coca-cola at its plant in Claxton, Georgia, where the contents of the bottle in question were manufactured and bottled. But the jury was authorized to find from the evidence and the inferences to be drawn therefrom that the contents of the bottle of coca-cola had not been changed or tampered with since it left the possession of the bottling company. Consequently, the inference could be drawn that the foreign matter was in the bottle of coca-cola when it left the possession of the bottling company. In arriving at a verdict the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved. Code, § 38-123. The doctrine of res ipsa loquitur is simply a rule of evidence, which permits an inference to be drawn from proved facts. See *Macon Coca-Cola Bottling Co.* v. *Crane,* 55 *Ga. App.* 573 (190 S. E. 879), and *Armour & Co.* v. *Gulley,* 61 *Ga. App.* 414, 419 (6 S. E. 2d, 165) and cit.

The jury, at the request of the defendants, was permitted by the court to visit the plant of the bottling company and observe the machinery, manner, and method used by it in manufacturing and bottling coca-cola, and after doing this and considering the evidence the jury returned a verdict for the plaintiff for $250. See *Mayor &c. of Milledgeville* v. *Brown,* 87 *Ga.* 596, 599 (13 S. E. 638); *City of Atlanta* v. *Milam,* 95 *Ga.* 135 (22 S. E. 43); *A. & W. P. R. Co.* v. *Mims,* 122 *Ga.* 422 (50 S. E. 137); *Moore* v. *Macon Coca-Cola Bottling Co.,* 180 *Ga.* 335 (178 S. E. 711), s. c. 51 *Ga. App.* 148 (179 S. E. 916); *Porter* v. *Georgia Power Co.,* 46 *Ga. App.* 613 (167 S. E. 903). Under the evidence and facts as disclosed by the record, and the law applicable thereto, we think

308

that the verdict was authorized, and the court did not err in overruling the motion for new trial.

Judgment affirmed. *Stephens, P. J., and Felton, J., concur.*