31475. SIMMONS COMPANY *v.* HARDIN.

Decided July 15, 1947.

*Smith & Long,* for plaintiff in error.

*G. Seals Aiken, Isaac C. Adams,* contra.

MacIntyre, P. J. 1. Under the general grounds of his motion for new trial, the defendant contends that the verdict, as a matter of law, is contrary to the evidence presented at the trial and should not be allowed to stand.

In his brief and argument, the defendant (plaintiff in error) admits that the petition sets forth a cause of action and was not subject to general demurrer, but he insists that the verdict is contrary to the evidence as a matter of law. The plaintiff contends that this is a new assignment and can not be considered by this court, not having been raised in the court below. This contention is not meritorious, for there is an assignment of error in the bill of exceptions to the judgment overruling the defendant's motion for a new trial, which contains the usual general grounds—(1) because the verdict and judgment is contrary to the evidence and without evidence to support it; (2) the verdict and judgment is decidedly and strongly against the weight of the evidence; and (3) because the verdict and judgment is contrary to law and the principles of justice and equity. This raised the question for determination whether under the evidence and the facts as disclosed by the record and the law applicable' thereto the verdict was authorized by the evidence. *Claxton Coca-Cola Bottling Co.* v. *Coleman,* 68 *Ga. App.* 302, 304 (22 S. E. 2d, 768); *Investors Finance Co.* v. *Hill,* 194 *Ga.* 236, 241 (21 S. E. 2d, 220); *Horsley* v. *Woodley,* 12 *Ga. App.* 456 (2) (78 S. E. 260); *Rubin* v. *Hardin,* 173 *Ga.* 127 (159 S. E. 711); 5 C. J. S. Appeal and Error, 607, § 1647 (b).

2. The evidence discloses that, while the plaintiff was sitting in front of the sofa bed or studio couch (hereinafter referred to as a sofa), which sofa was open for the purpose of storing bedclothes used thereon in the compartment provided for that purpose under the seat of the sofa, one end of one of the cross-wise or "U"-type springs became detached and struck the plaintiff in her right eye, causing a complete loss of said eye; that the sofa was purchased by the plaintiff on February 23, 1942; that in March, 1944, the plaintiff and her husband moved from Atlanta to within a few miles of Dalton, the sofa was put to general use, the alleged injury was sustained on September 4, 1944; and that the sofa was not abused in use or in moving prior to the injury. We will add, without going into further details, that the testimony of the plaintiff on direct examination, and the testimony of her witnesses, made out a prima facie case for recovery.

The plaintiff, Mrs. Hardin, on recross examination, testified that she was sitting in front of the sofa, reading a letter which she

had found in the compartment under the sofa, when the spring became detached and struck her in the eye. She testified further that prior to the injury she had noticed that a spring was loose and broken and she had "hooked" it to the clamp. On redirect examination she testified: "I did not touch this spring that flew out and hit me in the eye. I was not fooling with that spring when it flew out from the bottom and hit me in the eye. . . I was not putting that spring in when the spring hit me." On recross examination she testified: "Before I was struck in the eye none of these springs had broken loose. One of them had slipped out. I don't know which one; I can't tell you. It slipped loose from the top. . . I found it loose that morning when I went to put the bed-clothes down in the bottom compartment. I slipped it back in the little hickey up there where it slips in. I don't know which spring it was."

Professor O. M. Harrellson testified for the defendant in substance that the clamp holding the spring broke because of two reasons: one, the clamp itself contained a fracture; and two, the clamp was not driven down flush against the wood of the frame, permitting the clamp to work back and forth while in service, and it finally broke in two at the point of fracture. He described the final failure of the clamp as due to "fatigue in service," and stated that the defective affixing of the clamp would, by its working back and forth, cause the final break. He further testified: "In this particular case, with close inspection, a capable inspector could probably have been able to detect to see that [the defect] after it was fabricated. . . I know he could have detected whether or not it was nailed down securely, like it should have been, but so far as the actual fracture, it is possible he could have overlooked that, because the fracture could have been so small the natural eye would not have caught it. And the fracture broke it down, due to the fact that it was not nailed down securely. . . In my opinion, from this indentation on the shank of the nail that I referred to, below the head, the nail showed itself that it was not down flush with the metal at the time it was applied."

Harry Arrington testified for the defendant: "I have been with Simmons Company a little over twenty-seven years. I supervise the manufacture of all upholstery, woodwork and box springs— general foreman of the department. . . When this spring is

turned loose or comes loose, in its upward movement, it comes out from the couch five and a half inches; that is what it shows here, approximately. Of course, it could vary a quarter of an inch one way or the other. I know what inspections are made with reference to this construction, that is, affixing the spring to the framework of the couch. This is put on by the men working at the table. The foreman or assistant foreman goes through the department at different times. He doesn't see every one of them, but he makes a check inspection at times. These clamps are put on these boards by the workman. I know how he does it. He first attaches the clamp to the frame, with a nail in the back on each side. He hooks the spring in one side, and then he stretches it out and hooks it on the other side. Then he goes back and puts two nails in each side. If I had to nail that clamp on there and put that spring in there, I would have to see it to put that nail in the hole."

At this point we shall consider the sufficiency of the evidence as a whole in the light of the verdict and determine whether or not the evidence is sufficient to authorize the verdict.

Here the suit is against the manufacturer for a serious injury causing the entire loss of an eye, which is the disabling of a member of the body of the plaintiff.

Where there is no privity of contract between the manufacturer and the purchaser from the retailer, the manufacturer's liability to the purchaser, from the retailer, who is thus seriously injured because of the defective construction or manufacture of the article, must rest in tort. *Woodward* v. *Miller,* 119 *Ga.* 618 (46 S. E. 847, 64 L. R. A. 932, 100 Am. St. R. 188).

We are aware that a sofa is a rather ordinary article or piece of furniture, and that no contractual privity existed between the plaintiff and the manufacturer, the defendant. We realize further that the common law, as a general rule, throws a strong arm of protection around the manufacturer, warding off claims of third persons, not direct purchasers, for injury sustained from the use of the article so manufactured and sold by him. Shearman and Redfield on Negligence, § 653, states: " 'The general rule is that a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles.' "

Cooley on Torts (4th ed.), § 498, states: "The general rule is that a contractor, manufacturer, vendor, or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of such article."

Both of these textbooks refer to exceptions to the general rule: (1) as to articles inherently dangerous; that is, articles in which the danger is due to the nature of the article, and not to the defects in an article naturally harmless; and (2) as to the extension of such exception to articles the nature of which is such that they are reasonably certain to place life or limb in peril because of the defects in the articles due to the negligent manufacture thereof. The last-mentioned class of articles is then said to be a thing of danger. When they are so manufactured with such defects, their nature gives warning of the consequences to be expected. "The purpose which the article, if perfect, is intended to accomplish is immaterial. The important thing is the harm which it is likely to do if it is imperfect." Restatement of the Law of Torts, 1074, § 395.

The sofa here is not an inherently destructive instrument. It may have within itself, if negligently made, the potency of danger; yet no one thinks of it as an implement whose normal function is destruction. It becomes dangerous only if so imperfectly constructed that its defects so make it.

In Thomas v. Winchester, 6 N. Y. 397 (57 Am. D. 455), a poison was falsely labeled. The sale was made to a druggist, who in turn sold to a customer. The customer recovered damages from the seller who affixed the label. The defendant's negligence, it was said, put human life in imminent danger. A poison, falsely labeled, is likely to injure any one who gets it. Because the danger is to be foreseen, there is a duty to avoid the injury.

The leading case which extended or expanded the exception to the general rule to include articles other than those inherently dangerous is MacPherson v. Buick Motor Co., 217 N. Y. 382 (111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440), wherein Justice Cardozo, speaking for the court, said: "The defendant is a manufacturer of automobiles. It sold an automobile to a retail dealer. The retail dealer resold to the plaintiff. While the plaintiff was in the car it suddenly collapsed. He was thrown

out and injured. One of the wheels was made of defective wood, and its spokes crumbled into fragments. The wheel was not made by the defendant; it was bought from another manufacturer. There is evidence, however, that its defects could have been discovered by reasonable inspection, and that inspection was omitted. There is no claim that the defendant knew of the defect and willfully concealed it."

In the same case, Justice Cardozo said: "We hold, then, that the principle of Thomas v. Winchester is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. That is as far as we are required to go for the decision of this case. . . In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."

The above excerpt was also quoted in the case of Kalash v. Los Angeles Ladder Co., 1 Cal. 2d, 229 (34 Pac. 2d, 481). There the manufacturer of a ladder sold it to the owner of a house who employed a painter to paint the house. While the painter was so engaged, the rung of the ladder on which he was standing collapsed, due to its defective condition, and the painter was thrown to the ground and sustained serious and permanent physical injuries, and a recovery was sustained.

In the Kalash case, the court said: "The same learned justice [Cardozo], in his work entitled 'The Growth of the Law,' comments further upon this subject as follows (The Growth of the Law, 1924 Ed., p. 77) : 'The development is merely a phase of the assault, now extending along the entire line, upon the ancient citadel of privity. In New York, there is a remedy in tort regard-

less of privity, against the negligent manufacturer, where the subject of the manufacture is likely to be dangerous to life. Mac-Pherson v. Buick Mfg. Co., 217 N. Y. 382 [111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440]. The things classified as dangerous have been steadily extended with a corresponding extension of the application of the remedy. They began with Thomas v. Winchester, 6 N. Y. 397 [57 Am. Dec. 455], and the sale of poisons. They have been widened until they include a scaffold (Devlin v. Smith, 89 N. Y. 470 [42 Am. Rep. 311]) or an automobile (MacPherson v. Buick Mfg. Co., supra), or even pies or cakes when nails and other foreign substances have supplied ingredients not mentioned in the recipes of cookbooks.'

"This same tendency in England is noted in a recent decision by the House of Lords, styled Donoghue v. Stevenson, [1932] A. C. 562, where the subject received extensive consideration and the doctrine announced by Mr. Justice Cardozo was approved.

"This court has marched in complete step with these advancing judicial pronouncements. Witness among others the recent case of Dahms v. General Elevator Co., 214 Cal. 733, 740, 7 P. (2d) 1013, 1016, where it is said: 'In many jurisdictions in recent years, there has been a marked tendency to extend the exception under discussion beyond inherently dangerous articles to those articles which are reasonably certain to place life and limb in peril if negligently prepared or constructed.' "

We might add that among other recent cases following the Mac-Pherson case, supra, is that of Hoenig v. Central Stamping Co., 273 N. Y. 485 (6 N. E. 2d, 415), wherein the manufacturer of a coffee urn was held liable to a caterer employed by a remote purchaser for burns suffered through the breaking of a handle of the urn, on the ground that the defendant was negligent in the manufacture of the urn and that it had negligently, and without making proper tests and inspection, joined the handles thereof in an inferior, unsafe, and unsuitable manner. See also Statler v. George A. Ray Mfg. Co., 195 N. Y. 478 (88 N. E. 1063), in which a recovery was sustained because of the defective manufacture of a coffee urn. In Goullon v. Ford Motor Co., 44 Fed. 2d, 310, the steering wheel of a tractor broke; in Rotche v. Buick Motor Co., 358 Ill. 507 (193 N. E. 529), an automobile was alleged to have contained an unspread cotter pin in the brake mechanism; and

in Alexander *v.* Torridaire Company, 265 N. Y. 616 (193 N. E. 412), burns were caused by excess heat generated by a heating pad which was used according to directions. In each of those cases the rule in the MacPherson case was approved.

While it is true that it is possible to use almost anything in a way that will make it dangerous if defective, that is not enough to charge the manufacturer with a duty independent of his contract, but here the plaintiff was using the sofa in the ordinary way in which the manufacturer intended for it to be used. Taking that view of the evidence most favorable to upholding the verdict, it was shown that the plaintiff was taking the bedclothes off the sofa and putting them in the compartment provided therefor in the bottom of the sofa; that while so engaged she saw a piece of letter she had written to her husband in the compartment; that she took this letter and sat in front of the couch to read it; and that while sitting in front of the couch reading the letter one of the springs of the couch became detached and struck her in the right eye. The plaintiff testified: "I did not touch this spring that flew out and hit me in the eye. I was not fooling with that spring when it flew out from the bottom and hit me in the eye. . . I meant that I was sitting in front of the couch and the lower end of the spring came loose and hit me in the eye. I was not touching the couch at all. I was not putting that spring in when the spring hit me."

Here the injury done because of the defective construction of the sofa was serious and not trivial, for it caused the plaintiff the loss of a member of her body; and having inflicted this serious and permanent injury, it demonstrated that when negligently made it had the potency of danger, and its power to become dangerous was shown by what it did.

Again quoting from the MacPherson case, supra, it is there said: "Subtle distinctions are drawn by the defendant between things inherently dangerous and things imminently dangerous, but the case does not turn upon these verbal niceties. If danger was to be expected as reasonably certain, there was a duty of vigilance, and this whether you call the danger inherent or imminent."

Since the MacPherson case was decided, it seems to us that the principle therein announced has been approved by most, if

not all, of the American cases as well as the English case of Grant *v.* Australian Knitting Mills [1936] A. C. 85 (105 A. L. R. 1483). We feel that no good purpose would be served by attempting to review at length the wide range of discussion that has attended the progressive development of the rules of law now governing causes involving this subject. It is sufficient to say that from the principle stated we conclude that it was a proper question for the jury as to whether or not the sofa, when used as the plaintiff was using it, because of defective construction became an article or instrument imminently dangerous to human life or limb, and that the finding of the jury was authorized by the evidence.

3. We will treat special grounds 4, 5, and 6 together, as the defendant has done in its brief. The defendant requested the court to charge the following: "Gentlemen of the jury, even though you find that the defendant was negligent, in using a defective clamp or clip as alleged, this negligence, if you find it to be negligence, would not authorize you to find for the plaintiff, unless you also find that this alleged negligence was the proximate cause of her injury. And if you find that the plaintiff in this case, sustained the injury alleged, while in the act of affixing or fastening said spring in its place on the frame work of said couch, and while so doing, she lost control of said spring and by reason thereof, the said spring struck her in the eye, inflicting the damage sued for herein, then in that event she could not recover in this case."

The court did not charge in the language of this request, but charged as follows: "Now, the law places upon every person the duty to exercise care for their own safety and protection. If you find that the defendant was negligent in using a defective clip or clamp, as alleged, or in some other detail alleged in her petition and amendment, this negligence, if you find the defendant to be negligent, would not authorize you to find for the plaintiff unless you also find that this alleged negligence was the direct and proximate cause of her injury.

"[If you find that the plaintiff in this case sustained the injury alleged while in the act of affixing or fastening said spring to the framework of said couch, and that while so doing the spring struck her in the eye, inflicting the damage sued for], but if you find that said injury was the result of accident or of her own neg-

ligence, and not as the proximate result of defendant's negligence, then the plaintiff would not be entitled to recover, even though you find that plaintiff was negligent as stated."

The defendant assigns error in this charge as being confusing, in that the first portion of the second paragraph enclosed in brackets is an incomplete sentence and does not state the legal result which would follow a finding that the plaintiff's injury was caused by her act in permitting the spring to fly from her hand, striking her in the eye putting it out. The defendant also assigns as error the remaining language of the charge for the reason that such language indicated to the jury that the plaintiff would be barred from recovery only in the event of accident or her own neglect without regard to whether or not the plaintiff sustained injury by reason of attempting to put or replace the spring back onto the frame of the couch. The defendant contends that the use of the word "but" set apart from each other the portion dealing with the plaintiff's act in undertaking to put the spring back on the couch permitting it to fly from her hand, striking her in the eye, and the remaining portion of the charge dealing with accident and negligence in general terms.

The word "but" was used in the sense of the word "still" (5 W. & P., Perm. Ed., "But," p. 1059), and when given this obvious meaning, the charge complained of was a complete sentence and was not subject to the objection urged. In short, while the charge as given was not in the exact language of the request, it substantially covered the request, which was not more specific in its application than was the charge as given. *Brown* v. *State*, 195 *Ga.* 430 (24 S. E. 2d, 312).

4. Ground 6-A of the motion for new trial assigns error on the following charge: "The plaintiff would not be entitled to recover, even though the defendant were negligent in one or more of the particulars alleged, unless such negligence upon the part of the defendant was the direct and proximate cause of the injury and damage to the plaintiff. . .

"Now, gentlemen, as to the degree of care which the law places upon the plaintiff, I charge you that if the plaintiff, by the exercise of ordinary care, could have avoided the consequences to herself caused by the defendant's negligence, she would not be entitled to recover. The duty of exercising ordinary care to avoid the

consequences of another's negligence does not arise until the negligence of such other is existing or is apparent or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence. Therefore, if the defendant were negligent and such negligence caused the injury to the plaintiff, but if the plaintiff, in the exercise of ordinary care, for her own safety could have discovered such negligence and prevented injury to herself, she could not recover. The plaintiff would not be entitled to recover if the negligence of the plaintiff, prior to the time of the discovery by her of the defendant's negligence, if she did discover the same or could have discovered the same, or prior to the time it should have been discovered, by the exercise of ordinary care was greater than the negligence of the defendant or equal to it; that is, gentlemen, if the plaintiff herself were negligent in and about this transaction and her negligence was as great as or greater than the negligence of the defendant, she could not recover in this case."

This charge is not error for any of the various reasons urged. See, in this connection, *Southern Ry.* v. *Reed,* 40 *Ga. App.* 332 (149 S. E. 582); *Lewis* v. *Powell,* 51 *Ga. App.* 129 (179 S. E. 865).

5. Special ground 7. The defendant contends: "The court nowhere charged the jury directly that if the plaintiff's injuries resulted by reason of her own negligence or carelessness, amounting to a failure to exercise ordinary care for her own safety, she could not recover." We think that this principle was correctly given in the charge to the jury, and "where an instruction to the jury states a correct principle of law applicable to the case, it is not open to criticism on the ground that the judge did not in the same connection charge more elaborately on the subject." *Scott* v. *Wimberly,* 188 *Ga.* 148 (1) (3 S. E. 2d, 71). "The failure to give in charge a pertinent instruction not requested in writing will not require a new trial, where the general charge substantially covers the issues in the case." *Western & Atlantic R. Co.* v. *Tate,* 129 *Ga.* 526 (6) (59 S. E. 2d, 266); *Wrightsville & Tennille R. Co.* v. *Gornto,* 129 *Ga.* 204 (5) (58 S. E. 769). This assignment of error is not meritorious.

6. Special ground 8. The court charged the jury: "Now, gentlemen, these are all matters for the jury to pass upon—all

questions of negligence in this case. Questions of diligence, negligence, and contributory negligence, as to which I will charge you in a moment, as the proximate cause of injury, if she received an injury, are for the jury to pass upon. So, gentlemen, you will pass upon the question as to whether the defendant was negligent in any of the particulars alleged in plaintiff's petition, and whether such negligence caused any injury or damage to the plaintiff, under all of the instructions which the court has heretofore given you. If, under the instructions given you, you find that the plaintiff is entitled to recover, the next question would be as to the amount of damage plaintiff would be entitled to recover."

The defendant complains that this instruction, coming as it did at the close of the charge on the question of negligence—the court immediately thereafter going into the charge on the question of damages—in effect limited the jury's consideration to the question as to the defendant's negligence, and in effect deprived the defendant of its defense that the negligence of the plaintiff herself was the sole cause of her injury and damage. When the charge is considered as a whole, there is no merit in this contention.

7. Special ground 9, complaining that the charge permitted a double recovery of damages, we think, is not meritorious.

8. Special ground 11. The evidence objected to in this ground was admissible, in that it was a circumstance serving to elucidate or throw light upon the issue being tried. *Sample* v. *Lipscomb,* 18 *Ga.* 687. See, in this connection, *Gilmer* v. *Atlanta,* 77 *Ga.* 688; *Franklin* v. *Macon,* 12 *Ga.* 257, 261.

9. Special ground 12. The charge on comparative negligence complained of in this ground shows no reversible error.

10. Special ground 13. The court charged the jury: "The loss or material impairment of any power or faculty is a matter of compensation, regardless of any pecuniary return the exercise of same may produce and irrespective of any conscious pain or suffering." This charge is not error for any of the reasons urged.

Special ground 10 raises the question of trial practice involving argument of counsel before the court and jury. This ground states: "(A) During the argument before the court and jury counsel for defendant in error addressed the court and the jury in the following manner: 'We have prepared a request to charge along the lines of *Langran* v. *Hodges,* 60 *Ga. App.* 567, in which

Mr. G. Seals Aiken, one of the attorneys for the plaintiff in this case, represented the plaintiff in the *Langran* case, in which a recovery was had for double vision.' When this argument took place counsel for plaintiff in error promptly moved the court for a mistrial, and in the alternative requested the court in the event the motion was overruled to sustain an objection to the argument of counsel and to instruct the jury to disregard it, and stated that, in view of the prominence of counsel for defendant in error and his standing at the bar, it was assumed he knew the rules of the court, and for that reason the court should reprimand counsel in the presence of the jury for making the argument complained of. The court overruled the motion for mistrial, and in dealing with the question of reprimand stated: 'I am a little cautious about rebuking counsel for this reason. Sometimes, in making application for admission to certain courts like the United States Supreme Court, they ask the question whether counsel has ever been rebuked, or something of that sort. I don't impute to counsel for the plaintiff any purposeful violation, but I think the court should make a statement to the jury and seek to disabuse their minds.' Whereupon, the jury was called back into the box, and the court stated: 'You should not be influenced to even the slightest extent by some other case in which very different facts were perhaps involved. I don't know. Some jury might even find in favor of a plaintiff, but that should not influence you in the slightest in this case. Every case is tried on its own facts. In a great many cases the plaintiffs have recovered and in a great many cases plaintiffs have lost the cases, but every case is tried on its merit. The fact that in some other case the plaintiff or the defendant may have won or lost is absolutely not to be considered in this case. The court is of the opinion that counsel should not have stated the nature of the other case, the way it terminated, or who was counsel in the case. The court does not state that counsel made this statement, knowing that it was improper or should not have been made.'

"(B) During the argument on the motion for mistrial as related above in subdivision (A), and while the jury was out of the box, counsel for defendant in error asked the court's permission to read an excerpt from the opinion of the Court of Appeals in the case of *Langran* v. *Hodges,* 60 *Ga. App.* 567. The excerpt

which counsel desired to read is as follows: 'It seems to us that the loss or material impairment of any power or faculty is matter for compensation, irrespective of any fruits, pecuniary or otherwise, which the exercise of the power or faculty might produce; and irrespective, also, of any conscious pain or suffering which the loss or impairment might occasion. Every person is entitled to retain and enjoy each and every power of body and mind with which he or she has been endowed, and no one, without being answerable in damages, can wrongfully deprive another, by a physical injury, of any such power or faculty or materially impair the same. That such deprivation or impairment can be classed as pain and suffering was ruled by this court in *Powell* v. *Railroad Co.* (77 *Ga.* 200, 3 S. E. 757); and inasmuch as enforced idleness or diminished efficiency in offices of labor is calculated to give rise to mental distress, it is not error to describe the thing by its effects and call it pain and suffering.' Whereupon counsel for plaintiff in error stated that he had no objection to the reading of this excerpt. The jury were ordered back into the courtroom and into the box, and after the court had instructed the jury as to the argument referred to in subdivision (A) hereinbefore, counsel for defendant in error stated that he wished to call the court's attention to that portion of the opinion contained on pages 569 and 570 of the 60th Appeals (hereinbefore quoted). Whereupon the following took place: 'Mr. Long: A moment ago, while the jury was out, I indicated to the court that I had no objection to counsel reading that portion he had just read—the last portion he has just read, beginning on page 570 of the 60th Georgia Appeals.' Mr. Aiken: 'And also the preceding page.' Mr. Long: 'I am objecting to that portion beginning with the words, "it seems to us," and ending with the words, "pain and suffering," that excerpt being approximately in the middle of the page. I indicated a moment ago that I had no objection to that, but after considering the matter in my mind I feel that in justice to my client—' The court: 'Gentlemen, the case just read by counsel was cited to the court to assist the court in making a proper charge to the jury, and the court, in his charge, will try to give to the jury such portions of that decision or other decisions as may be necessary to guide you in your deliberations. You will be guided only by the instructions given you by the court upon the facts

taken from this case, and you are not to be influenced by any other law that may have been read in your hearing.' Mr. Long: 'I am objecting to the reading of that excerpt.' The court: 'Yes, I don't think that that excerpt, as referred to on page 570 of the 60th Georgia Appeals, starting with the words, "It seems to us," and ending with the words "Pain and suffering"—I don't think that it was proper to read that to the jury.' Mr. Adams: 'As I understood it, while the jury was out—I can be mistaken—both of those excerpts were submitted to him and he did not object to them.' Mr. Long: 'I stated that I had no objection, and I also stated just now, in the presence of the court and jury, that I had changed my mind about it.' The court: 'Mr. Adams was in the utmost good faith.' Mr. Long: 'Yes, sir. I do not charge any bad faith to him at all.' The court: 'Counsel was about to read that under the previous ruling of the court while the jury was out, but the court has reversed his ruling. There is absolutely no criticism of counsel for trying to read that, but the court thinks it better to instruct the jury as to this law and not have the statement made in that particular case read to the jury.'

"At this point the trial was adjourned until the following morning at 9:30, and on convening the next morning counsel for defendant in error raised the question with the court as to the court's propriety in its ruling on the motion for mistrial referred to in subdivision (A) of this ground, and asked the court to withdraw certain remarks the court made to the jury in connection with his ruling on that motion, and insisted that the remarks of the court and ruling on the motion for mistrial were prejudicial. Whereupon the court said: 'Suppose I let you read that to the jury. I will let you read that portion of the decision to the jury (referring to the excerpt hereinbefore referred to).' Whereupon counsel for defendant in error stated he thought that would cure the prejudicial effect of the court's ruling as he contended. Whereupon the court said: 'Since they don't know what the law is . . we can dispose of it in this way. I will let you read that portion to the jury. I will reverse my ruling and let you read that.' At this point counsel again asked the court to withdraw the remarks the court had made in ruling on the motion for mistrial, to wit, 'Some jury may have found in favor of a plaintiff.' The court then said this: 'I overruled that. I will state for the record why

I am. I think that the remarks by counsel that some counsel in this case tried another case of a similar character, then the jury found in favor of the plaintiff, was prejudicial, I debated in my own mind whether to grant a mistrial. I didn't even rebuke counsel. I think what I said to the jury was the very least the court could say to eliminate any prejudicial effect.'

"The jury were returned to the box and the court addressed the jury as follows: 'Gentlemen, on yesterday counsel for the plaintiff started to read a portion of a certain decision to the court, and the court ruled that he could not read it. I am going to reverse my ruling and let counsel read that portion of the decision to the court in the hearing of the jury. . . The reason I am doing that is that I don't wish any inference to be in the minds of the jury that counsel was trying to do something improper.'

"Whereupon counsel for plaintiff in error had recorded in the record an objection to the court's reversal, permitting a reading of factual matters and argument from a decision of an appellate court of this State. The objection was overruled, and counsel read [to the court in the presence of the jury] the excerpt from *Langran* v. *Hodges,* 60 *Ga. App.* 570 hereinbefore quoted."

We do not think that this ground shows reversible error.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*